(No. 10778.)

THE BLOOMINGTON, DECATUR AND CHAMPAIGN RAILROAD COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 21, 1916—Rehearing denied Feb. 7, 1917.*

1. WORKMEN'S COMPENSATION—*time of certifying transcript of evidence before arbitration committee is not essential.* The time when a transcript of the evidence taken before the arbitration committee shall be certified by the chairman of the committee is not essential, and the certificate may lawfully be made before the decision of the Industrial Board is given.

2. SAME—*proof that death was caused by accident arising out of employment rests on administratrix.* Where an employee dies suddenly and mysteriously while engaged in his work the burden of proof that his death was an accident arising out of his employment rests upon the administratrix, and such proof must amount to something more than mere guess.

3. SAME—*when presumption is that death was due to external agency.* Where there is evidence that an employee was, and for twenty-one years had been, in perfect physical condition, the reasonable presumption is that his sudden death while engaged in work upon the top of a street car was due to some external efficient agency, particularly where the evidence shows that an external efficient agency was present in the form of an iron "ground" and the exposed end of a cable charged with 550 volts of electricity.

4. SAME—*the Supreme Court cannot interfere where decision of Industrial Board is based on credible testimony.* If there is credible testimony before the Industrial Board tending to show that the employee was killed by contact with an exposed electric wire while engaged in his employment the Supreme Court cannot weigh the evidence and interfere with the decision of the board, notwithstanding no one saw how the employee met his death and there is testimony that he could not have been killed in such manner.

FARMER and DUNN, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

. CHARLES C. LEFORGEE, THOMAS W. SAMUELS, and GEORGE W. BLACK, for plaintiff in error.

A. R. Ivens, and Whitley & Fitzgerald, for defendants in error.

Mr. Justice Cartwright delivered the opinion of the court:

Henry Yanda was a carpenter in the employ of the Bloomington, Decatur and Champaign Railroad Company, which operated an interurban railroad, and on July 9, 1914, he died instantly while working, in company with George E. Albeitz, on top of one of the company's cars in the Decatur shops. The administratrix of his estate claimed compensation from the company, and being refused, a committee of arbitration was appointed. On November 7, 1914, the committee heard the evidence of her claim and found for the company. Notice of the decision was mailed from Chicago on November 12, 1914, and within the time fixed by the statute the administratrix filed a petition with the Industrial Board asking for a review of the decision and for time in which to file a stenographic report of the evidence. On December 23, 1914, within the time extended for that purpose, the stenographic report was filed. At the hearing before the Industrial Board the attorney for the railroad company moved to dismiss the proceeding because the stenographic report was not filed within the time required by statute, and the attorney for the claimant replied that an extension had been granted, and this was not denied. The motion was then denied. A hearing was afterward had before the Industrial Board, resulting in a finding for the administratrix and fixing weekly payments to be made to her. The company sued out a writ of *certiorari* from the circuit court of Macon county, and the circuit court, on a hearing, confirmed the decision and entered judgment accordingly. The court certified that the cause was one proper to be heard by this court, and the record is now under review by writ of error.

At the hearing before the Industrial Board counsel for the company objected to the stenographic report or transcript of evidence taken on the previous hearing because not authenticated by the signatures of the parties or their attorneys or by the signature of the chairman of the board. The evidence was taken and transcribed by the. official reporter of the circuit court, and was taken by him for both parties and paid for by both of them equally. The transcript was made and paid for by the company, and the reporter testified that it was correct and his testimony was not disputed. The hearing proceeded on the transcript of evidence so taken and transcribed and additional evidence, and on June 10, 1915, before the decision of the Industrial Board, which was on October 20, 1915, the transcript was certified by the chairman of the arbitration committee. If the authentication was essential and the transcript could not be considered without it, the time was not essential and the certificate could lawfully be made at the time it was made.

The following facts were proved: Henry Yanda and George E. Albeitz were carpenters working on top of a car about nine feet wide and thirty-one feet long. There were running-boards laid lengthwise on top of the car, about six inches apart, and the roof of the car on each side was oval, making what was called a "turtle-back" car. There were a number of hatchways for ventilation placed in pairs on each side of the running-boards, about twelve inches wide, sixteen inches long and sixteen or eighteen inches deep. At the bottom of each ventilator there was an iron frame forming a "ground," and near Yanda was an exposed end of an uninsulated cable charged with approximately 550 volts of electricity, and the ventilator beside him was open. Yanda and Albeitz were working on opposite sides of the running-boards, putting nuts on bolts. Albeitz finished putting the nuts on the bolts on his side and tightened the same with his wrench and Yanda's wrench, which he had on his side. Yanda had been having some trouble

getting one of the nuts on the bolt on his side, and finally said to Albeitz that he had got it on. It was then necessary for him to get the wrenches from Albeitz on the other side of the running-boards to tighten the nut. He was about to get the wrenches when Albeitz saw him suddenly rise up in a half-standing position, with both feet on top of the car, and fall over lengthwise of the car. Albeitz said they had been talking about the weather and other things, and that he had his cap down over his eyes so that he could not see Yanda without raising his head a few inches, because he had his head down when he was working. He did not see Yanda step into or otherwise come into contact with the iron in the ventilator or with the exposed end of the cable, but when he saw him he was half standing and was keeling over. Albeitz grabbed him and he was taken down from the car, dead. Yanda was forty-seven years old, in perfect health, had not been sick in twenty-one years and never laid off from work on account of any physical condition or ailment. The company offered the testimony of witnesses that there were no burns on Yanda, and produced a number of experts who testified that he could not have come to his death in the manner claimed unless there were burns upon his person. On the other hand, there was evidence of witnesses who had themselves been shocked by electricity so as to become insensible for a time without any mark of burns upon them, and that persons who had been killed by lightning showed no signs of burns. There was evidence of experts that death from a contact with wires was different from death from lightning. On the review before the board Yanda's daughter testified that his hands were burned, and one of them very badly, so that it was drawn and shriveled.

The burden of proof that Yanda's death was an accident arising out of his employment rested upon the administratrix, and such proof must amount to something more than mere guess and conjecture. That being so, it is con-

tended that there was an entire failure to prove the cause of his death, and that the decision of the board rested on nothing but the possibility of a contact with the iron plate and the exposed end of the cable, and even that possibility was negatived by the testimony of Albeitz. The evidence was that Yanda was, and for twenty-one years had been, in perfect physical condition, and the reasonable presumption is that he was killed by some external, efficient agency. The agency was present if it became operative through contact with the iron plate and exposed end of the cable. If the testimony of the daughter was true, it is certain that he did come into contact with the deadly agency, and we have no authority to consider the weight of the evidence where there was credible testimony before the board. The fact that other persons testified differently does not authorize interference with the decision of the board. Neither does the fact that Albeitz, who was looking down and working with his cap over his eyes, did not see Yanda make the contact. Albeitz saw him half standing, when he keeled over, gave two or three gasps and was dead, and the rational explanation is that the death was caused by an electric shock.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Farmer and Dunn, JJ., dissenting:

We cannot agree to the opinion in this case. Paragraph (*b*) of section 19 of the Workmen's Compensation act provides that the decision of the committee of arbitration shall become the decision of the Industrial Board unless within fifteen days after receipt of a copy of the decision and notice of the time when it was filed with said board a petition for a review is filed, and unless such party petitioning for a review shall, within twenty days after receipt by him of the copy of said decision, file with the board either an agreed statement of the facts appearing

upon the hearing before the arbitrator or committee of arbitration, or if such party shall so elect, a correct stenographic report of the proceedings at such hearing. The Industrial Board may, for sufficient cause shown, grant further time, not exceeding thirty days, "in which to petition for such review or to file such agreed statement or stenographic report." The agreed statement of facts or stenographic report "shall be authenticated by the signatures of the parties or their attorneys, and in the event they do not agree as to the correctness of the stenographic report it shall be authenticated by the signature of the chairman of the committee of arbitration." The things required by the statute to be done to give the board jurisdiction to review the decision of the committee of arbitration are, filing a petition for review and an agreed statement of facts or correct stenographic report authenticated in the manner provided. The requirement that a petition for review shall be filed within fifteen days after notice of filing the decision, or within such further time, not exceeding thirty days, as the board may grant for sufficient cause, is in no plainer, more direct and positive terms than the requirement that the agreed statement of facts or stenographic report, duly authenticated, shall be filed within twenty days after notice of filing the decision, or within such further time, not exceeding thirty days, as the board may for sufficient cause grant. The plain, unambiguous language of the statute is that the decision of the committee of arbitration shall become the decision of the Industrial Board unless a petition for review and agreed statement of facts or stenographic report, authenticated, shall be filed within the time prescribed. Both are required to give the board jurisdiction to review the decision, and it certainly cannot be said to be a compliance with the statute to file a transcript of what purports to be the evidence heard before the committee of arbitration, unauthenticated. As we understand the statute, the decision of the committee of arbitration becomes the

decision of the Industrial Board, and cannot be reviewed unless the authenticated report, as well as the petition for review, is filed within the time prescribed. The authentication of the report is made essential by the statute, and no provision is made for filing or authenticating it after the time limited has expired. There does not seem to .be any such ambiguity in the statute as to authorize giving it any other meaning than that which its language imports. The legislature has said what is necessary to be done to secure a review of the decision of the committee of arbitration by the Industrial Board, and that should govern.