# Richmond

## Agnes Byrd v. Stonega Coke & Coal Company.

January 24, 1944.

Record No. 2755.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Fred B. Greear*, for the appellant.

*Camblos & Sandt*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

Frank Byrd had been employed at the coke ovens of the defendant company for approximately six years. On July 30, 1942, he began work at the coke ovens about midnight and continued to work until 10:45 a. m. the next day, when, while pulling coke out of the oven, he suddenly fell backward and died within a few moments. Agnes Byrd, wife of the decedent, filed with the Industrial Commission her claim for compensation under the Workmen's Compensation law. She prosecutes this appeal from an order of the Commission denying her compensation.

The undisputed evidence shows that Byrd was a negro man, forty-one years of age and apparently in excellent health. During the preceding seven years he had been ill only once, then for two weeks in February, 1942, with an attack of influenza. He was thoroughly examined six years prior to his death and found to have no heart trouble. The company doctors examined him again in February, 1942.

The report of the examination made no reference to an affliction of the heart. The evidence is conclusive that Byrd was a healthy, strong, comparatively young man and apparently free of physical ailments.

The duties of decedent required him to operate several coke ovens which are filled with coal and burned to coke. The coke is removed several times during the day. The temperature in the ovens is raised to 2400 or 2500 degrees. When the coke is in proper condition, water is turned on the ovens and the temperature of the coke is reduced so that it can be handled. Then the oven doors are opened and the coke is pulled out with tools varying. in length from four to twelve feet. The accumulated gas is drawn off through tunnels, but occasionally some escapes through the door when it is opened. The temperature around the oven, where the duties of the decedent required him to be, was ten or twelve degrees higher than normal. July 31 was a very hot sultry day. Some witnesses stated that it was one of the hottest days of the summer. Under these conditions, decedent was pulling or jerking a "beaver," used to break the coke down and rake it through the door, when he suddenly collapsed and died.

Michie's Code, 1942, sec. 1887(2), (d), provides that "'injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment * * * ."

As an original proposition, it would seem logical to hold that the facts, as related, do not disclose an "accident." However, generally it has been held that the term "injury," "personal injury," or "personal injury by accident," caused by excessive heat, cold or other meteorological phenomena, is embraced within the meaning of the statute. On this subject, however, there are conflicting opinions. See *McCormick Lbr. Co.* v. *Department of Labor, etc.,* 7 Wash. (2d) 40, 108 P. (2d) 807; *Central Illinois Public Service Co.* v. *Industrial Comm.,* 291 Ill. 256, 126 N. E. 144, 13 A. L. R. 967, and annotation 974; *Cunningham* v. *Warner Gear Co.,* 101 Ind. App. 220, 198 N. E. 808; *Scott County School*

*Board* v. *Carter*, 156 Va. 815, 159 S. E. 115, 83 A. L. R. 229, and annotation 234; *Hagrove* v. *Arnold Const. Co.*, 229 Mich. 678, 202 N. W. 918, 40 A. L. R. 398; *In re Madden*, 222 Mass. 487, 111 N. E. 379, 382, L. R. A. 1916D, 1000; 28 Ruling Case Law, sec. 87, p. 795; Schneider's Workmen's Compensation Law, vol. 1, 2d ed., sec. 249, p. 701.

In *Farmers' Mfg. Co.* v. *Warfel*, 144 Va. 98, 131 S. E. 240, at page 242, it is said: "The injury, to be compensable, must, of course, be shown to be a consequence or result arising out of the employment, and if this consequence or effect, i. e., the injury, can be traced to the employment as the cause, then it is logical to hold that it arises out of the employment."

Whatever may be the conflicting views in other jurisdictions, it is now settled in Virginia, both by decisions of the Industrial Commission and this court, that, if the injury or death results from, or is hastened by, conditions of employment exposing the employee to hazards to a degree beyond that of the public at large, the injury or death is construed to be accidental within the meaning of the statute. See *Richardson* v. *Ratcliffe and Tanner, Inc.*, (sunstroke), 8 O. I. C. 1028; *Robinson* v. *Miller Mfg. Co.* (heat stroke), 9 O. I. C. 465; *Carter* v. *Scott County School Board* (tornado), 12 O. I. C. 236; *Scott County School Board* v. *Carter, supra; White* v. *Mason Mfg. Co.*, 13 O. I. C. 540.

Stating the same principle in different language, an employee is entitled to recover for injuries sustained if those injuries (not disease) were the immediate consequence of his exposure to a greater hazard by reason of his employment than that to which he otherwise would have been exposed.

The employee in the instant case was apparently enjoying the best of health. Neither his wife nor intimate friends had ever heard him complain of any physical ailment except during the one attack of influenza which occurred five months prior to his death. While performing his duties under conditions that exposed him to artificial

heat to a much greater degree than he otherwise would have been exposed, he suddenly collapsed and died. The natural inference from these conceded facts is that the extreme heat to which the employee was exposed was the proximate or contributing cause of death. This is true because it is a matter of common knowledge that frequently persons apparently normal collapse from exposure to extreme heat or cold. Hence, when facts, such as heretofore stated, are established, a claimant should be held to have made out a *prima facie* case for compensation.

Defendant, while conceding the extra-hazardous conditions under which the employee worked, contends that there was no causal connection between the extra hazards and the death of the employee.

Five doctors testified, three for claimant and two for defendant. A study of this expert testimony leaves the mind in doubt and confusion. Two doctors stated that they thought death was due to heart failure. One of these added: "What part the heat or exertion played I am not able to say."

Dr. Frank E. Handy, witness for the claimant, stated that, in the absence of other known causes, the excessive heat was probably the proximate cause of death. On cross-examination, he was asked this question:

"Q. Under the circumstances about which Mr. Greear asked you, if you would rule out heat stroke and leave all the other causes of death in, then, what would you say would cause the man's death?

"A. It is more apt to be some heart condition to cause a sudden death like that, I think."

This statement threw no light on the issue.

Dr. Glen D. Foster was called to attend and reached the decedent within thirty minutes after he was stricken. When called as a witness by defendant, he stated: " * * * I examined his heart in particular, and examined his pupils, and they were normal in outline but did not react, which was one indication that he was not alive; and there was no sweat, which is one of the principal symptoms going with

a heat stroke; i. e., his clothes were not excessively sweaty and his bodily temperature was not excessive. His body had not cooled off completely but he was not hot."

He stated that the medical authority to which he referred was Cecil on General Medicine. Dr. G. W. Botts, called by claimant, read from the same medical textbook, in which it is said: "In heatstroke or sunstroke the heat-regulating mechanism of the body is apparently overwhelmed and not merely embarrassed as in heat exhaustion. The onset may be catastrophic, with almost instantaneous death, or there may be premonitory headache, dizziness, nausea, and visual disturbances.

"Consciousness is lost early in the course of the attack. The face of the patient is flushed, the skin dry and hot. The body temperature is elevated in the more severe cases to 109 F. or more. In the first stages of heat-stroke the pulse is full and rapid, the breathing deep, and the pupils possibly dilated. As the patient's condition becomes progressively worse the pulse grows irregular, rapid, and more feeble, the breathing more shallow and of the Cheyne-Stokes type, and the pupils contract."

It is thus seen that the authority on which Dr. Foster relied does not fully support his opinion.

Dr. G. W. Botts was asked:

"Q. Doctor, assuming that this man did have some heart ailment, would the exposure to this excessive heat have any effect on his heart aside from a straight out heat-stroke?

"A. Yes, the heat could embarrass the action of a normal heart."

It is useless to quote other excerpts from the testimony of the experts. It is, at best, uncertain, indefinite and not convincing.

In *Pripich* v. *State Compensation Com'r*, 112 W. Va. 540, 166 S. E. 4, 5, this is said: "Where, in the course of and arising out of his employment, an employee in good health and of strong physique suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the

injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him. *Poccardi* v. *Public Service Commission*, 75 W. Va. 542, 84 S. E. 242, L. R. A. 1916A, 299; *Demastes* v. *Commissioner* (W. Va.), 165 S. E. 667." See also, *Hollenbach Co.* v. *Hollenbach*, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; *Bloomington, etc., R. Co.* v. *Industrial Board*, 276 Ill. 454, 114 N. E. 939; *Green* v. *Bennettsville*, 197 S. C. 313, 15 S. E. (2d) 334; 71 C. J.; p. 1061; Schneider's Workmen's Compensation Law, 2d ed., secs. 167 and 173.

On the hearing before the Industrial Commission, the claimant must carry the burden of proving his claim. The finding of the Industrial Commission is presumed to be correct and the burden is on appellant in this court to point out the error committed by the Commission. If, on appeal, this court determines that the evidence is sufficient to support the finding of the Industrial Commission, the order of the Commission will be affirmed. If, on the contrary, this court determines that the evidence is not sufficient to support such finding, the final order of the Commission will be reversed. Since the award of the Industrial Commission is against this claimant, the legal question presented to this court is whether the evidence adduced compels an award for her; that is, whether the preponderance of the evidence, together with the inferences and presumptions which normally arise therefrom, is, in favor of the claimant.

Sec. 61 of the Workmen's Compensation Act provides, in part, that "an award of the Commission * * * upon review * * * shall be conclusive and binding as to all questions of fact." The intrepetation of this language has been before this court on numerous occasions.

Mr. Chief Justice Campbell and Mr. Justice Eggleston, in *Hubbard* v. *Dan Valley Mills, post*, p. 223, and *Carter* v. *Hercules Powder Co., post*, p. 282, opinions announced at this session of court, restate the rule heretofore

pronounced to the effect that, where there is a conflict of evidence, the Commission's finding of fact is conclusive. Such finding "is almost, if not quite, equivalent to a demurrer to the evidence." *Scott* v. *Willis*, 150 Va. 260, 263, 142 S. E. 400. The converse of this proposition is equally true; namely, if there is no credible evidence on which the Commission's finding of fact is based, then such finding is not binding upon this court. The question then becomes a question of law.

All the doctors testified that acute heart failure was the immediate cause of the death of decedent. They concede that exposure to abnormal heat may, and frequently does, affect the heart action. Some of the usual symptoms of heat stroke were noted and others were not. No witness stated that the abnormal heat to which decedent was exposed was not a contributing factor in producing the heart attack.

There is a marked distinction between the facts in this case and the facts in *Hubbard* v. *Dan Valley Mills, supra*. In the latter case, the employee, a salesman, was injured in an automobile accident on November 18, 1938. At the hospital it was found that he had sustained a contusion of the right knee but no scratches or bruises were found on other parts of his body. There was no evidence of a head injury, nor did he complain of pain in his head. He went from Rocky Mount, North Carolina, where he was injured, to his home in Richmond on the night of the accident. He stated to his wife that he was "completely dazed" by the accident. In two days he returned to his employment and continued his normal work uninterruptedly until March 14, 1939, when he died while on a business trip from intracranial hemorrhage. The testimony of the physicians was that death was due to the hemorrhage, which may have resulted from an old head injury but most probably the hemorrhage resulted from a tumor. The employee complained of headaches and shortness of breath both before and after the accident. There was no evidence tending to show that the employee's head was injured in the accident of November

18, 1938. The failure to produce such evidence was fatal to claimant's case.

It has been suggested that the principle enunciated here will change the rule governing the burden of proof of causal connection in actions at law to recover damages for wrongful death or personal injuries. But that is not so. The Workmen's Compensation Act was adopted for the benefit of employees and their dependents. It should be liberally construed in order to attain the desired results. The strict rules of common law actions should not be applied. In such actions usually the parties are dealing at arm's length from inception of the incidents leading to the actions. This is not true of the employer and the employee under the Workmen's Compensation law. Settlement between the parties without litigation is encouraged and is made in the great majority of cases. The employee usually reposes confidence in his employer and expects the employer to aid rather than hinder him in obtaining compensation for accidental injuries.

While a claimant has the burden of establishing his claim, he should not be required to establish causal connection between the accident or extra hazardousness of his employment and the injury beyond all reasonable doubt. A strong natural inference should tip the scale in favor of the claimant when medical experts materially differ or assign merely probable and conjectural reasons for their conclusion.

In the absence of positive testimony to the contrary, the only logical conclusion to be drawn from the facts and circumstances, shown to exist immediately before, at the time of and immediately after the death of the employee, is that death was the result of the conditions under which the employee was required to perform the duties of his employment. The evidence for defendant, which was offered to defeat the claim, consists of the testimony of two doctors, who merely stated that in their opinions death was due to a natural cause but failed or declined to say whether the excessive heat to which decedent was exposed

.was a contributing factor. Under these circumstances, we hold that the evidence is sufficient to support an award for claimant, and that defendant's evidence is not sufficient to overcome the *prima facie* case established by claimant. The excessive heat to which decedent was exposed is a controlling factor in the case, and cannot be ignored, as it seems to have been by the medical experts called by defendant.

The order of the Industrial Commission will be reversed and the case remanded, with direction to determine and allow the proper amount of compensation to which claimant is entitled according to the facts.

*Reversed and remanded.*