COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Overton
Argued at Alexandria, Virginia


ANDREA MARIE FREY
                                            OPINION BY
v.    Record No. 0492-02-4         JUDGE JAMES W. BENTON, JR.
                                        DECEMBER 10, 2002
GUNSTON ANIMAL HOSPITAL AND
 CINCINNATI INDEMNITY CO.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Mark S. Levinstein (Williams & Connolly, LLP,
            on brief), for appellant.

            Calvin W. Fowler (Williams Mullen, on brief),
            for appellees.


     Andrea Marie Frey appeals from a decision of the Workers'

Compensation Commission denying her claim for reimbursement for

the cost of injections, which she alleged were required as a

result of exposure to the rabies virus in her employment.  She

contends the commission erred in finding that the feral cat she

medicated did not have rabies and that the evidence failed to

prove an injury by accident.  For the following reasons, we

reverse the commission's decision.

                              I.

     The evidence is essentially undisputed.  Gunston Animal

Hospital employed nineteen-year-old Andrea Marie Frey as a

veterinary assistant.  Although Frey had not been vaccinated for

rabies, Dr. Allison Mayo, the veterinarian-owner who was treating a feral cat for upper respiratory and head cold symptoms, directed Frey to medicate the cat. Frey put medication into the cat's mouth using her hands, which had pre-existing scratches from handling other animals. Frey testified that when she put her hand inside the cat's mouth to insert the medication, she probably touched the cat's tongue and that there was "a good chance that . . . saliva came in contact with [her] hands." The day after Frey medicated the cat, the cat's condition worsened.

Before the cat came to the hospital for treatment, the cat had been in a colony of feral cats. These feral cats were living less than three miles from a park where three feral cats were discovered to be rabid. The veterinarian who treated the cat was unaware of these circumstances and had not directed Frey to take precautions with the cat. After the cat developed progressive neurologic symptoms, however, another veterinarian instituted rabies precautions to assure that none of the employees would have further exposure to the cat. The veterinarian then "euthanized" the cat but failed to test the cat for rabies.

After the hospital "erroneously" delivered the cat's body to be buried, the veterinarian-owner who had treated the cat obtained a booster shot for herself to prevent a rabies infection. When the veterinarian-owner learned of Frey's

exposure to the cat, she contacted several experts in rabies epidemiology because of her concern for Frey, who was unvaccinated. After those experts recommended rabies treatment for Frey, Frey received injections to prevent rabies infection. The hospital's workers' compensation insurer concluded, however, that Frey's condition did not result from an accidental injury or occupational disease and declined to pay for the treatment.

The deputy commissioner denied Frey's claim for reimbursement of the $1,765 cost for the injections. The deputy commissioner ruled that Frey did not have an occupational disease because she was never diagnosed with rabies. In addition, the deputy commissioner ruled that Frey did not sustain an injury by accident and that Frey was seeking benefits for prophylactic treatments.

Rendering three opinions on review, the commission upheld the deputy commissioner's decision. The majority opinion found that Frey only proved a possible exposure to rabies and has never been diagnosed with rabies. Thus, it denied Frey's claim on the ground that Frey failed to carry her burden of proving she has suffered either an occupational disease or an injury by accident. In a concurring opinion, a commissioner agreed that Frey's claim was not compensable, stating, however, that "[i]f the cat had tested positive for rabies, [he] would have found that the risk of being stricken with rabies was sufficient to render the claim compensable." In a dissenting opinion, the

third commissioner indicated the evidence warranted an award because "an employee who during the course of her employment becomes exposed to a potentially fatal substance has sustained an injury by accident" and is entitled to be reimbursed for treatment rendered for that exposure.

## II.

This record presents no conflicts in any material fact.  As such, the sufficiency of the evidence to support the commission's decision is purely an issue of law.  Eccon Const. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981).  In other words, the commission's decision, unlike one based on conflicting facts, is not conclusive; rather, it is subject to our determination whether "'the correct legal conclusion has been reached.'"  Id. (quoting City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965)).  On the evidence in the record, we must determine whether Frey has "'prove[d] by a preponderance of the evidence . . . an "injury by accident."'" Ogden Aviation Servs. v. Saghy, 32 Va. App. 89, 94, 526 S.E.2d 756, 758 (2000) (citations omitted).

### (A)

The commission found that Frey failed to prove the feral cat had rabies and that "[t]he most [Frey] has demonstrated is a possible exposure to a rabid animal."  No credible evidence supports that finding.

- 4 -

"Having in mind that the purpose of the Compensation Act is to protect the employee, and that it should be construed liberally and favorably as to the workman, we [take] a common sense practical view of the facts and [the universally] accepted . . . medical theory" proved on this record. Ellis v. Commonwealth, 182 Va. 293, 303, 28 S.E.2d 730, 734 (1944). The only fact that supports the commission's finding is the lack of a positive rabies test. The absence of a test, however, is not alone sufficient to find that the evidence did not prove by a preponderance the cat had rabies.

The undisputed evidence established that the feral cat had lived outdoors within three miles of other rabid, feral cats. Although the treating veterinarian initially had not been aware of the cat's living environment, when the cat's symptoms of upper respiratory illness quickly developed into signs of neurological dysfunction consistent with rabies, another veterinarian responded. Her conduct demonstrates her significant concern about the existence of rabies in the cat. She first instituted rabies precautions and, after the cat developed progressively worsening neurological symptoms, she "euthanized" the cat. The record clearly indicates the concern about rabies was not just an academic one. Although the treating veterinarian had been vaccinated against the rabies virus, she obtained a booster injection to protect against rabies. Furthermore, when the veterinarian-owner contacted

- 5 -

"experts in rabies epidemiology" and explained the events, those experts recommended Frey be treated for rabies and developed a treatment plan. The veterinarian-owner reported she could not say conclusively that the cat had rabies because "the veterinarian on duty erroneously permitted the cat's body to be taken and . . . buried without rabies testing." She opined, however, "very strongly that this cat probably had rabies."

Frey is not required to conclusively prove the cat had rabies. As the Supreme Court long ago noted, although the employee has the burden of establishing her claim, she need not do so beyond all reasonable doubt. Byrd v. Stonega Coke & Coal Company, 182 Va. 212, 221, 28 S.E.2d 725, 729 (1944). Unless a statute designates differently, "[t]he burden of persuasion . . . is proof by a preponderance of the evidence." Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 3, 427 S.E.2d 428, 430 (1993), aff'd, 247 Va. 165, 440 S.E.2d 613 (1994).

When, as here, the evidence raises a "strong natural inference" about the fact to be proved, Byrd, 182 Va. at 221, 28 S.E.2d at 729, the conclusion is inescapable that the feral cat had rabies. Indeed, the record contains no testimony or evidence to the contrary. Absent any conflicting evidence, there is only one "logical conclusion to be drawn from the facts and circumstances" proved on this record, id., -- the evidence proved by a preponderance that the feral cat was rabid. All of the circumstances, especially the events that occurred after the

feral cat developed progressive neurologic symptoms, contributed to the veterinarian's expert conclusion that the feral cat had rabies. Accordingly, we hold that the commission's ruling that the evidence failed to prove the cat had rabies is not supported by credible evidence.

(B)

"[T]o establish an 'injury by accident,' [an employee] must prove (1) that the injury appeared suddenly at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden precipitating event, and (3) that it resulted in an obvious mechanical or structural change in the human body." Southern Express v. Green, 257 Va. 181, 187, 509 S.E.2d 836, 839 (1999). As a guiding principle in applying the Act, we are required to liberally construe the provisions of the Act to carry out its humane and remedial purposes of affording compensation to employees who suffer accidental injuries resulting from hazards in the work environment. Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978); Feitig v. Chalkley, 185 Va. 96, 98, 38 S.E.2d 73, 73-74 (1946).

The evidence proved that Frey was required to give the cat medicine by placing her "hand inside of the cat's mouth." Frey's hands had "scratches . . . at the time she treated the cat" and were exposed to the cat's tongue and saliva. Thus, Frey's exposure to rabies was an identifiable incident occurring

- 7 -

when she put her hands in the cat's mouth.  Frey's exposure to the virus occurred suddenly upon the contact of her scratched hands with the cat's tongue and saliva.  See Derby v. Swift Co., 188 Va. 336, 341, 49 S.E.2d 417, 420 (1948).  Exposure of broken skin to the rabies virus is a means by which infection occurs in the body, resulting in bodily change.  See e.g. Burlington Mills Corp. v. Hagood, 177 Va. 204, 209, 13 S.E.2d 291, 293 (1941) (noting that injury includes whatever change in one's system produces a lessened facility of a bodily capability).  Of course, for purposes of determining whether Frey suffered an injury by accident, "it is not essential that the scratch [on her hand] be itself received in the course of employment, for the significance of the scratch lies in the abnormality and definiteness of the entry of the germs."  3 Arthur Larson and Lex K. Larson, Larson's Workers' Compensation Law § 51.02 (2002).

Recognizing the serious risk to which Frey was exposed, the veterinarian-owner sought advice from persons experienced with rabies epidemiology.  Those experts advised her to get treatment for Frey.  The veterinarian-owner informed the commission that her "decision to pursue treatment [for Frey] was based on published recommendations from national experts."  The evidence also proved that the clinic personnel advised Frey that she needed to take a series of injections to prevent rabies.  The record contains the report from the director of this clinic that

- 8 -

"[r]abies is a fatal disease if not treated with vaccine and immune globulin."  The report further indicates that "when a documented or likely exposure has occurred, post exposure prophylaxis is indicated regardless of the length of the delay, provided the clinical signs of rabies are not present."  To prove an injury by accident "[i]t is not necessary to show an immediate onset of the symptoms of an injury."  Turcios v. Holiday Inn Fair Oaks, 24 Va. App. 509, 515 n.1, 483 S.E.2d 502, 504 n.1 (1997).

The evidence in this record establishes that a medically recognized treatment, which can be administered before the fatal rabies virus is manifested, can effectively cure the consequences of exposure to the virus.  This evidence was sufficient to prove that Frey suffered an injury by accident when her hands, which had "numerous cuts . . . from previous animal encounters," were exposed to the saliva and the tongue of an ill, feral cat, which the veterinarians subjected to "rabies precautions . . . the next morning as the cat continued to worsen."

Furthermore, the record is undisputed that if a person who contracts the rabies virus is untreated, the result is generally fatal.  See also Andrulonis v. United States, 724 F.Supp. 1421, 1438 (N.D.N.Y. 1989) (noting that the "neurologic effects of the rabies virus on an infected individual are so severe that the disease of rabies is almost always fatal"), aff'd in part and

rev'd in part, 952 F.2d 652 (2nd Cir. 1991).  The seriousness of Frey's exposure is attested by the hospital's actions following the discovery of the feral cat's neurologic symptoms.  Under these circumstances, the injections, which were rendered after this exposure and given as medically recommended to prevent the fatal illness, were not preventative medicine but, rather, treatment for exposure to the rabies virus.  In a similar vein, the commission has ruled that after an employee has infectious exposure to a person who has hepatitis B, "medical treatment rendered . . . to prevent the employee from contracting the disease . . . [is not] preventive medicine."  Cross v. Neurology Specialists, Ltd., 67 Va. W.C. 45 (1988).

Other courts have "h[e]ld that persons exposed to a serious risk of contracting a disease which is commonly known to be highly contagious/infectious and potentially deadly, have been 'injured' for the purpose of receiving compensation under the Act."  Jackson Township Volunteer Fire Department Company v. Workmen's Compensation Appeal Board, 594 A.2d 826, 828 (Pa. Commw. Ct. 1991).  See also Arkansas Dep't of Corrections v. Holybee, 878 S.W.2d 420 (Ark. App. 1994).  We are persuaded, as was the court in Doe v. City of Stamford, 699 A.2d 52 (Conn. 1997), that "[i]ndeed, it would be contrary to the humanitarian and remedial purpose of the act to infer that the legislature intended that an employee who sustains actual exposure to a potentially fatal infectious disease must await the onset of the

disease before he can recover expenses associated with necessary, and possibly lifesaving, medical intervention." Id. at 55. Thus, as the Doe court held, when an employee "has sustained actual exposures to life threatening infectious diseases in incidents that arose out of and occurred in the course of his employment, the [employee] has suffered compensable injuries under the act and may recover the expenses associated with reasonable medical testing and treatment." 699 A.2d at 54.

In summary, because the scratches on Frey's hands were exposed to the tongue and saliva of a feral cat that was subject to rabies precautions by Frey's employer before it was destroyed and that the veterinarian believed to be rabid, the evidence proved Frey suffered actual exposure to a life threatening virus. Thus, the evidence proved a compensable injury by accident for which she was entitled to recover the expenses incurred for the rabies treatment.

Accordingly, we reverse the commission's decision denying the award.

Reversed.