COURT OF APPEALS OF VIRGINIA

Present:   Judges Annunziata, Frank and McClanahan
Argued at Chesapeake, Virginia


KJELLSTROM & LEE, INC. AND
  HARTFORD INSURANCE COMPANY
  OF THE MIDWEST
                                                      OPINION BY
v.      Record No. 2305-03-1               JUDGE ROBERT P. FRANK
                                                    MARCH 30, 2004
FRANK J. SAUNDERS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        S. Vernon Priddy III (Jeffrey W. Saunders; Sands Anderson Marks &
        Miller, on brief), for appellants.

        Byron A. Adams for appellee.


        Kjellstrom and Lee, Inc. and its insurer, Hartford Insurance Company of the Midwest

(employer), appeal from a decision of the Workers' Compensation Commission awarding

benefits to Frank J. Saunders (claimant).  On appeal, employer contends the commission erred in

finding claimant's heatstroke and heart attack arose out of his employment.  Finding no error, we

affirm the decision of the commission.

BACKGROUND[1]

        Claimant began his workday as a traffic flagger for employer at 7:00 a.m. on June 4,

2002, near Williamsburg, Virginia.  He was required to direct traffic in four directions, using his

arms, while standing on concrete and asphalt that were generating heat.  Around 12:15 p.m., the

supervisor asked claimant if he wanted someone to relieve him for lunch.  Claimant declined the

---

        [1] We view the evidence in the light most favorable to the party prevailing below.  Creedle
Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997).

offer because he believed that his regular relief person would arrive at 12:30 p.m., giving him an opportunity to get water and find some shade. While his supervisor maintained that claimant was not relieved because he said he did not need a break, at the hearing claimant denied making that statement.

At about 2:15 p.m., claimant began feeling dizzy and stumbling. He eventually fell to the ground. He was taken to the Williamsburg Community Hospital and admitted. The medical history, taken at the hospital, indicated that, three days earlier, claimant had "severe left sided chest pain described as heartburn sensation, associated with minimal shortness of breath." The discharge diagnosis stated: "Evolving recent anterior wall myocardial infarction that probably occurred 2-3 days prior to admission" and "Transient ischemic attack/cerebroembolism secondary to hypokinetic apex."

Claimant, at the hearing, described the earlier episode as having "heartburn early Saturday morning because I went to a cookout and had spicy food, grills and hot peppers Friday night." He denied telling the medical personnel he had shortness of breath.

Claimant's job on June 4th involved directing four-way traffic, heavy equipment, and asphalt trucks, while standing on concrete and asphalt. The job required that claimant work in the sun, and he could not leave his post because of the heavy traffic. Claimant and other workers characterized June 4, 2002, as "hot and humid." They estimated the temperature was in the "low 90's." The commission received evidence that, according to the National Climate Weather Service, Newport News, the closest reporting site to Williamsburg, had the following temperatures: at 6:54 a.m. -- 69°; at 11:54 a.m. -- 82°; at 2:15 p.m. -- 84°. Claimant indicated the concrete and asphalt on which he stood generated additional heat.

Claimant had coffee to drink, but finished his coffee around 10:30 a.m. He had no access to water because he "just couldn't leave since [he] was the only one that was directing the

traffic." No one was available to relieve claimant and allow him to take a break. A co-worker testified that a water cooler was located in a restroom, some 500 feet from claimant's post. No evidence indicated claimant knew the water cooler was there or that he could leave his post to obtain water.

Charles McKenney normally relieved claimant. However, several days before the June 4th incident, a supervisor told him not to relieve claimant any further. When asked why claimant could not simply leave his post and take a lunch break, McKenney responded, "because when you're directing traffic, they want somebody to relieve him . . . ."

Claimant's cardiologist checked "yes" on the drafted Statement of Opinion, indicating claimant's "working conditions on [June 4, 2002] which included high levels of heat and humidity and a lack of fluids, [were] the cause of his stroke and heart attack and inability to work thereafter."

The deputy commissioner found a compensable injury occurring on June 4, 2002.

Upon review, the full commission affirmed the deputy's finding. Responding to employer's argument that the evidence did not show exposure to an "extraordinary environmental condition," the opinion stated:

> [T]he evidence showed that the claimant's work environment was distinguishable from other employees who are required to work outside. It was firmly established that the weather was hot and humid, and the claimant worked in the open on asphalt and concrete. No relief was provided for the claimant, and under these circumstances, the deputy commissioner was not convinced that the claimant was free to take as many breaks as required. Finally, the uncontradicted medical evidence showed that the claimant's work, in the heat, without food or water, resulted in the heat stroke and heart attack. We agree with the deputy commissioner that the claimant suffered an injury by accident arising out of and in the course of his employment.

ANALYSIS

The issue on appeal is narrow in scope. Employer contends the commission misapplied

the causation standard when it based its causation decision solely on the heat of the day.

While we agree with employer that the claimant must prove his heatstroke and heart attack

resulted from peculiar conditions related to his employment,[2] we believe the commission applied

the correct standard here.

> To recover benefits, the claimant must establish by a
> preponderance of the evidence that [she] suffered an injury
> by accident "arising out of and in the course of [her]
> employment," Code § 65.2-101, and "that the conditions of
> the workplace . . . caused the injury." Plumb Rite
> Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382
> S.E.2d 305, 306 (1989).
>
> Falls Church Const. Corp. v. Valle, 21 Va. App. 351, 359-60, 464
> S.E.2d 517, 522 (1995). "The phrase arising 'out of' refers to the
> origin or cause of the injury." County of Chesterfield v. Johnson,
> 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989). "Whether an injury
> arises out of the employment is a mixed question of law and fact
> and is reviewable by the appellate court." Plumb Rite, 8 Va. App.
> at 483, 382 S.E.2d at 305 (citation omitted).

Stone v. Keister's Market & Grill, 34 Va. App. 174, 178-79, 538 S.E.2d 364, 366 (2000).

Here, employer does not argue that the injury occurred outside the course of employment.

Instead, employer contends the commission erred "[b]y its simply finding that [claimant's] heart

attack or stroke was caused by the heat and, without more, is therefore compensable." We

believe employer has misinterpreted the commission's opinion.

> In Virginia, we apply an "actual risk test," meaning that the
> employment must expose the employee to the particular danger
> causing the injury, notwithstanding the public's exposure generally
> to similar risks. Lucas [v. Lucas], 212 Va. [561,] 563, 186 S.E.2d

---

[2] While employer also suggests the evidence must show the exposure arose from an "extraordinary environmental condition," this Court has not used this phrase to describe the legal standard in such contexts. Instead, the case law clearly indicates the normal standard, that the injury must arise out of the peculiar conditions of employment, should be used here. See infra.

- 4 -

[63,] 64 [(1972)]. Thus, if there is a causal connection between [a claimant's] injury and the conditions of her employment, then her injury arose out of her employment. See United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985) ("An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.").

Combs v. Virginia Elec. & Power Co., 259 Va. 503, 510, 525 S.E.2d 278, 282 (2000).

The leading heatstroke case is Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 28 S.E.2d 725 (1944). In Byrd, the employee suddenly fell dead after pulling coke out of an oven on a very hot day. The temperature around the oven was ten or twelve degrees higher than normal. The Supreme Court noted at that time:

it is now settled in Virginia, both by decisions of the Industrial Commission and this court, that, if the injury or death results from, or is hastened by, conditions of employment exposing the employee to hazards to a degree beyond that of the public at large, the injury or death is construed to be accidental within the meaning of the statute. Stating the same principle in different language, an employee is entitled to recover for injuries sustained if those injuries (not disease) were the immediate consequence of his exposure to a greater hazard by reason of his employment than that to which he otherwise would have been exposed.

Id. at 216, 28 S.E.2d at 727 (citations omitted). The Court then applied that standard of causation to the facts of the case before it:

While performing his duties under conditions that expose him to artificial heat to a much greater degree than he otherwise would have been exposed, he suddenly collapsed and died. The natural inference from these conceded facts is that the extreme heat to which the employee was exposed was the proximate or contributing cause of death.

Id. at 216-17, 28 S.E.2d at 727.

By contrast, in Robinette v. Kayo Oil Co., 210 Va. 376, 377, 171 S.E.2d 172, 173 (1969), a gasoline station attendant who worked outside, without protective clothing or boots in "rainy, snowy and cold weather" for several days prior to his death from pneumonia, was denied

- 5 -

compensation. The Supreme Court acknowledged that, if the "peculiar conditions of employment required the employee to work under heat artificially increased in intensity," then an award of benefits would be appropriate. Id. at 380, 171 S.E.2d at 175. However, the Court then quoted with approval a Pennsylvania case which stated, "'we cannot take the position that every workman who has an outside job who happens in the discharge of his duties . . . to get soaked by a rain and contracts pneumonia, dies from accident.'"[3] Id. at 381, 171 S.E.2d at 175-76. The Court found nothing catastrophic, extraordinary, unexpected, or unforeseen about Robinette's working conditions.[4] Id. at 381, 171 S.E.2d at 176. Therefore, the denial of benefits was affirmed.

In the instant case, the conditions of claimant's workplace were created by his employment. The commission found more than simply hot and humid weather on the day claimant collapsed. The commission also found claimant worked in the open, in the sun, on asphalt and concrete, with no relief afforded by employer. Claimant was not free to leave his post. He did not have access to water. The evidence supports these findings. Further, the commission accepted the medical evidence that claimant's work, in the heat, standing on the road, without food or water, resulted in the heatstroke and heart attack. These factual findings are conclusive and binding on this Court as they are based on credible evidence. See Code § 65.2-706; James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989) (noting appellate courts will uphold the factual findings of the commission "if supported by credible evidence"); Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348

---

[3] Robinette also considered the nature of employee's pneumonia, which was the result of exposure to the elements over several days, and concluded such exposure was not an accidental injury.

[4] Nothing in Robinette suggests the claimant was prohibited from adequately protecting himself from the weather by either the nature of his work or by his employer.

S.E.2d 876, 877 (1986) (noting, if the record includes evidence to support the commission's factual findings, those findings will be upheld even though the record may contain evidence to the contrary).

Contrary to employer's position, the commission's findings encompassed more than a conclusion that the heat of the day caused claimant's attack. Instead, the commission found his exposure to the sun was beyond the norm. The conditions of his exposure were peculiar to the work required of claimant on June 4th. These facts bring this case squarely under Byrd and not Robinette.

CONCLUSION

The commission applied the appropriate standard of causation to this case, finding the injury arose out of and in the course of the peculiar conditions of claimant's employment. We affirm the award of benefits.

Affirmed.