COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued by teleconference

PAUL'S BAKERY, INC. AND
   FLAGSHIP CITY INSURANCE COMPANY

MEMORANDUM OPINION* BY
v.        Record No. 0314-10-2          JUDGE D. ARTHUR KELSEY
                                        AUGUST 24, 2010
CHARLOTTE KAY MURPHY

FROM THE WORKERS' COMPENSATION COMMISSION

Heather K. Bardot (Trichilo, Bancroft, McGavin, Horvath &
Judkins, P.C., on brief), for appellants.

Wesley G. Marshall (Law Offices of Wesley G. Marshall PLC,
on brief), for appellee.


The Workers' Compensation Commission awarded Charlotte Kay Murphy compensation

benefits related to a fall at work.  The employer appeals arguing the commission erred in finding

that Murphy's fall arose out of and during the course of her employment, and that she sustained a

shoulder injury.  Given the deferential nature of our appellate review, we affirm.


I.

We view the evidence on appeal in the light most favorable to "the prevailing party

before the commission."  Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d

431, 433 (2008) (citation omitted).

Murphy worked as a cashier at employer's gift shop, which was located next door to

employer's bakery.  One afternoon, just before she was about to head home, someone reported

that a boy was throwing rocks into the outside air conditioning units.  Murphy went behind the

gift shop to investigate whether employer's equipment was being damaged.  She walked through

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the parking lot and then stepped up onto a loading dock to look behind the dumpsters. As she did so, she heard a "rustling noise" nearby. She then stepped down about seven or eight inches onto the surface near the bakery side of the adjoining shops — a distance, she testified, "bigger than a step, a regular step." The loading platform lacked handrails and stood three to four feet above the ground. After Murphy heard someone yell her name, she "immediately turned around to see where the voice was coming from." "I went to step back onto the dock," she explained, "and that's when I fell."

When interviewed by employer's investigator shortly after the fall, Murphy said she tripped and fell but did not know what she tripped over. She then equivocated, saying "I don't know if I . . . you know tripped over something or if I just lost my balance or what happened." During her deposition, Murphy reaffirmed these statements as true but added that, after the interview with the investigator, she "actually had time to think about it" and went back to the bakery "to try to understand why [she] fell." After looking at the dock, she determined that when she attempted to ascend from the dumpster area to the dock, an irregular sized step caused her to fall.

At her evidentiary hearing, Murphy claimed her foot "got caught" on something because she later noticed a "scuff on my shoes on the end of the toe." When cross-examined at a deposition on the point, however, Murphy admitted she had previously said she did not remember her "foot catching on anything." Despite these apparent inconsistencies, Murphy again confirmed her prior statements to employer's investigator that she did not know what caused her to fall.

The business owner's son, Peter Glancy, said he saw a boy hiding behind the dumpsters. Glancy saw Murphy "coming back and forth, and she was looking for him." He yelled to her immediately before "[s]he lost her balance and rolled off the rolling dock and hit the ground."

Glancy testified Murphy never descended from the loading dock to the dumpsters below before her fall.

The deputy commissioner who presided over the evidentiary hearing denied Murphy's claim because, among other things, she found Murphy's evidence about the cause of the accident to be unpersuasive, her testimony inconsistent, and the evidence insufficient to establish a shoulder injury. Even if the claim were compensable, the deputy held, Murphy did not prove she injured her left shoulder as a result of the fall.

In its final opinion, the commission on a split vote reversed and awarded benefits. Affirming the conclusion of an earlier interlocutory opinion (but arguably changing its reasoning),[1] the commission majority found that Murphy fell while attempting to "step back" onto the loading dock which "was higher than a regular step." Murphy v. Paul's Bakery, Inc., VWC File No. 238-53-65, 2010 Va. Wrk. Comp. LEXIS 26, at *6 (Jan. 22, 2010). This condition, coupled with the "configuration of the loading dock and the claimant's distraction by the child for whom she was searching," satisfied the commission majority that the accident arose out of employment. Id. at *7.

In addition, the commission majority reaffirmed its earlier interlocutory order finding that the accident occurred during the course of Murphy's employment:

> The claimant's action in attempting to protect the employer's property provides a sufficient nexus with her employment. There is a conflict in the evidence about whether her workday was finished. The claimant testified that she was still working, and the employer testified that she was finished for the day. She had not left the employer's premises, and her action in attempting to stop the child from being injured or damaging the employer's property was reasonable. We find that the claimant was in the course of her employment when the accident occurred.

---

[1] We mention this point here for background sake but provide the details in section II(A) of this memorandum opinion.

Murphy v. Paul's Bakery, Inc., VWC File No. 238-53-65, 2009 Va. Wrk. Comp. LEXIS 254, at *9-10 (July 9, 2009), reaffirmed, 2010 Va. Wrk. Comp. LEXIS 26 (Jan. 22, 2010). Finally, the commission majority found the evidence proved Murphy injured her shoulder as a result of the fall. Contesting each of these findings, employer appeals.

II.

To be compensable, an injury must be "by accident arising out of and in the course of the employment . . . ." Code § 65.2-101. "The words 'arising out of,' as used in the Act, refer to the origin or cause of the injury while the phrase 'in the course of' pertains to the time, place and circumstances under which the accident occurred." Clifton v. Clifton Cable Contr., 54 Va. App. 532, 539, 680 S.E.2d 348, 352 (2009) (quoting Grand Union Co. v. Bynum, 226 Va. 140, 143, 307 S.E.2d 456, 458 (1983)). "The concepts 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded." Id. (citations omitted).

"An injury arises out of one's employment if there is a causal connection between the injury and the 'conditions under which the work is required to be performed.'" Id. (quoting Dan River, Inc. v. Giggetts, 34 Va. App. 297, 304, 541 S.E.2d 294, 297 (2001)). The condition "must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship." Id. (citation omitted). "On the other hand, an accident occurs in the 'course of employment' when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto." Id. (quoting Conner v. Bragg, 203 Va. 204, 208, 123 S.E.2d 393, 396 (1962)).

Fairly considered, employer argues, the factual record does not support the commission's finding that Murphy's fall arose out of a specific condition of her employment. Even if it

arguably did, employer continues, we should still reverse because Murphy's testimony triggered the preclusion rule of Massie v. Firmstone, 134 Va. 450, 114 S.E. 652 (1922). Employer also contests the commission's finding that the accident occurred during the course of Murphy's employment. Finally, employer challenges the commission's conclusion that Murphy injured her left shoulder.

A. ARISING OUT OF EMPLOYMENT

On its first point, we agree with employer's underlying premise — no presumption of causation arises from an "unexplained accident" involving non-fatal injuries. Hill v. S. Tank Transp., Inc., 44 Va. App. 725, 732, 607 S.E.2d 730, 733 (2005); see also PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 225, 468 S.E.2d 688, 693 (1996) (holding the "increased risk" test inapplicable to an "unexplained fall"). In this case, however, the commission inferred from the evidence an explanation for the fall that turned in part on the height and configuration of the loading dock combined with distractions Murphy faced while looking for the errant rock-throwing boy. Employer contends the commission was overly selective with the evidentiary record and ignored Murphy's inconsistent prior statements as well as the equivocal portions of her testimony at the hearing.

By statute, we treat the commission's factfinding as "conclusive and binding" if it rests on a sufficient threshold of evidence. Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 749-50, 601 S.E.2d 693, 697 (2004) (quoting Code § 65.2-706(A)). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command," id. (citation omitted), that binds us so long as a "rational mind upon consideration of all the circumstances" could come to the conclusion the commission adopted, K&G Abatement Co. v. Keil, 38 Va. App. 744, 756, 568 S.E.2d 416, 422 (2002) (citation and internal quotation marks omitted).

"Because we do not judge the credibility of witnesses or weigh the evidence on appeal, our personal view of the underlying factual debate plays no role in the task of appellate review." Clifton, 54 Va. App. at 541 n.2, 680 S.E.2d at 353 n.2 (citation and internal quotation marks omitted). It thus makes no difference that "we would have decided the fact[s] differently," Perry v. Delisle, 46 Va. App. 57, 67, 615 S.E.2d 492, 497 (2005) (*en banc*) (quoting in parenthetical from United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (in turn quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985))), because the statute authorizes the commission to adopt whatever view of the evidence it considers "most consistent with reason and justice," Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (citation omitted).

Applying this deferential standard of appellate review, we conclude a "rational mind upon consideration of all the circumstances," K&G Abatement Co., 38 Va. App. at 756, 568 S.E.2d at 422 (citation omitted), could find Murphy's fall was caused in part by a combination of the "higher than a regular step" distance from the dumpster level to the loading dock, the "configuration of the loading dock," and the "claimant's distraction by the child for who she was searching." Murphy, 2010 Va. Wrk. Comp. LEXIS 26, at *6. These conditions were peculiar to the workplace and exposed Murphy to "hazards to a degree beyond that of the public at large . . . ." Kjellstrom & Lee, Inc. v. Saunders, 42 Va. App. 673, 678, 594 S.E.2d 281, 283 (2004) (quoting Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 216, 28 S.E.2d 725, 727 (1944)).

We acknowledge, as employer urges, that the commission majority's conclusion rests on a rather delicate dissection of the factual record. Even so, in this case as in all others, the power to segregate evidence "into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper

performance." Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007);

see also James v. Commonwealth, 53 Va. App. 671, 679 n.2, 674 S.E.2d 571, 575 n.2 (2009).[2]

## B.   MASSIE v. FIRMSTONE

Employer argues the commission's findings violated Massie by relying exclusively on

Glancy's testimony which employer sees as completely at odds with Murphy's testimony.  We

agree that Massie applies to workers' compensation cases no less than to any other civil case.

We disagree, however, that the commission violated Massie.  Reinforcing the sanctity of sworn

testimony, Massie held:

> No litigant can successfully ask a court or jury to believe that he
> has not told the truth.  His statements of fact and the necessary
> inferences therefrom are binding upon him.  He cannot be heard to
> ask that his case be made stronger than he makes it, where, as here,
> it depends upon facts within his own knowledge and as to which he
> has testified.

Massie, 134 Va. at 462, 114 S.E. at 656.  As originally understood, Massie forbids a litigant from

introducing or relying upon evidence that contradicts unqualified factual assertions in the

litigant's sworn testimony.  But a litigant is "*not* 'bound' where the testimony is not clear and

unequivocal, or where reasonable men may differ as to the meaning or effect of it."  Charles E.

Friend, The Law of Evidence in Virginia § 18-51, at 893 (6th ed. 2003) (emphasis in original).

"The Massie doctrine must be applied in the context of the litigant's entire testimony."

Henderson v. Henderson, 255 Va. 122, 127, 495 S.E.2d 496, 499 (1998); Norfolk & W. Ry. v.

Chittum, 251 Va. 408, 413, 468 S.E.2d 877, 880 (1996).  Reading the testimony "as a whole," a

---

[2] "[E]stablished principles provide that the Workers' Compensation Commission is not bound by a deputy commissioner's prior findings on questions of witness credibility." McNamara v. Va. Emp't Comm'n, 54 Va. App. 616, 624, 681 S.E.2d 67, 71 (2009) (citations omitted).  So long as the commission does not "arbitrarily disregard" the deputy's credibility finding — which occurs only when the commission fails to provide a plausible explanation for its decision — the commission remains free to decide for itself whether to believe or disbelieve a witness.  Bullion Hollow Enters., Inc. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992); see also Commonwealth v. Bakke, 46 Va. App. 508, 528, 620 S.E.2d 107, 117 (2005).

- 7 -

"damaging statement made in one part of [a litigant's] testimony must be considered in the light of an explanation of such statement made in a later part of his testimony." TransiLift Equip. Ltd. v. Cunningham, 234 Va. 84, 94, 360 S.E.2d 183, 189 (1987) (citation omitted). See also Austin v. Jewell, 232 Va. 197, 201, 349 S.E.2d 113, 115-16 (1986); Olsten v. Leftwich, 230 Va. 317, 320-21, 336 S.E.2d 893, 895 (1985). In such cases, "it is generally for the [factfinder] to determine whether it will accept such explanation or clarification." VEPCO v. Mabin, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962).

Employer trains its Massie argument on the commission's 2009 opinion which reversed the deputy commissioner and remanded for additional proceedings. In that interlocutory opinion, the commission majority recited Glancy's version of the accident:

> We further find that the claimant's fall arose out of her employment. It was not an unexplained fall. *Peter Glancy, the owner's son, personally witnessed the claimant's fall and explained what occurred. Mr. Glancy testified that the claimant was moving back and forth on the loading dock looking for the child when she lost her balance, rolled off the loading dock and fell a total of three to four feet.* The loading dock was in a part of the employer's premises that was posted with no trespassing signs. The height of the loading dock was an added risk of the claimant's employment. Here, there is sufficient evidence that the configuration of the loading dock pictured in the record as well as the claimant's distraction by the mischievous child, was a condition of the claimant's employment, and this condition of the claimant's employment caused the claimant's accident.

Murphy, 2009 Va. Wrk. Comp. LEXIS 254, at *10 (emphasis added).

When the case returned again to the full commission the following year, employer pointed out that Glancy's explanation of the accident contradicted Murphy's testimony — thus precluding Murphy from relying on Glancy's version as a basis for finding the accident compensable. In response, the commission majority asserted: "We do not now, *nor did we in our prior decision*, adopt Mr. Glancy's version of the accident as the mechanism by which the claimant's injury occurred." Murphy, 2010 Va. Wrk. Comp. LEXIS 26, at *6 (emphasis added).

- 8 -

We question whether this assertion fairly represents the commission's "prior decision," id., apparently adopting Glancy's version of the accident. We nonetheless conclude it does not matter for purposes of this appeal.

Whether the commission fairly characterized its earlier interlocutory order is beside the point. The final award in this case is the commission's 2010 opinion. That opinion left no doubt as to the basis for the commission majority's reasoning:

> The *claimant testified* below that she stepped from the loading dock to the surface upon which the dumpsters were located, and that the distance from the loading dock to this surface was higher than a regular step. *As she went to step back onto the dock, she lost her balance and fell forward onto the dock.* She then fell over the end of the dock to the ground, a distance of three or four feet. We believe that this testimony, as well as the configuration of the loading dock and the claimant's distraction by the child for whom she was searching, is sufficient to establish compensability. *We do not, in making our compensability determination, rely upon any evidence contrary to or inconsistent with the claimant's testimony.* For this reason, Massie v. Firmstone is simply not applicable.

Id. at *6-7 (emphasis added). Murphy's testimony, taken as a whole, permits this view of the evidence. It thus follows that Massie poses no bar to the final factual findings adopted by the commission.

### C. IN THE COURSE OF EMPLOYMENT

Employer also contests the commission's finding that the accident occurred in the course of Murphy's employment. We find no merit in this contention.

Murphy was not on a frolic and detour or some personal mission unrelated to her work duties. She was at work on employer's premises, near or at the end of her shift, attempting to protect employer's property from damage. These facts justified the commission's conclusion that Murphy's accident occurred while she was either "reasonably fulfilling" her employment

- 9 -

duties or doing something "reasonably incidental thereto." Clifton, 54 Va. App. at 539, 680 S.E.2d at 352 (citation omitted).

### D. MURPHY'S LEFT SHOULDER INJURY

The commission found Murphy injured her left shoulder as a result of the accident. Employer contends the commission erred in relying on emergency room medical records to support Murphy's left shoulder injury award because these records do not mention any left shoulder injury.[3] Without these records, employer argues, the commission's decision rests on insufficient evidence. On appeal, Murphy concedes the emergency room medical records do not mention a left shoulder injury. She points out, however, that other evidence supports the commission's finding. We agree with Murphy. A finding of causation need not be "based exclusively on medical evidence . . . the testimony of a claimant may also be considered." Berglund Chevrolet, Inc., 43 Va. App. at 751 n.2, 601 S.E.2d at 697 n.2 (citation and internal quotation marks omitted). Murphy testified she injured her left shoulder. Her medical history and treatment after the emergency room visit also support the commission's finding that Murphy injured her left shoulder.

### III.

Sufficient evidence supports the commission's findings that Murphy's fall arose out of and during the course of her employment, and that she sustained a left shoulder injury. We thus affirm the commission's award of benefits.

Affirmed.

---

[3] The commission stated: "[T]he emergency medical personnel who assisted the claimant immediately after the fall recorded complaints of left shoulder pain." Murphy, 2009 Va. Wrk. Comp. LEXIS 254, at *11.