Present:  All the Justices

NORFOLK AND WESTERN RAILWAY COMPANY
                            OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v.  Record No. 951428
                                        April 19, 1996
JAMES L. CHITTUM

              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                        Clifford R. Weckstein, Judge


     The principal issue we consider in this appeal is whether

the evidence is sufficient to support a verdict in favor of the

plaintiff.  We also consider whether the trial court erred in

refusing to deduct the plaintiff's pension contributions in

calculating his net income.

                                   I

     Plaintiff, James L. Chittum, filed a motion for judgment

under the Federal Employers' Liability Act, 45 U.S.C. § 51 et

seq. (the Act or FELA), against his employer, Norfolk and Western

Railway Company (N & W), seeking recovery of damages for personal

injuries allegedly caused by N & W during the course of his

employment.  N & W denied liability, and a jury trial ensued.

The jury returned a verdict in favor of Chittum in the amount of

$300,000, and the trial court entered judgment thereon.  N & W

appeals.

                                  II

     Chittum prevailed at trial; therefore, we must view the

evidence and all reasonable inferences drawn therefrom in the

light most favorable to him.  Chittum commenced working for N & W

in June 1973 as a laborer, repairing railroad tracks.  In

December 1973, Chittum was shot in a hunting accident, and the

bullet lodged in his spine, rendering him paraplegic.  He gradually recovered, however, and, in 1978, after an evaluation and release by N & W's own doctor, he returned to his previous work.

Chittum, however, experienced some residual physical limitations, including a medical condition known as "foot drop" and chronic leg and back pain.  He also walked with a limp.  With the aid of metal foot and ankle supports attached to his shoes, however, Chittum was able to work regularly until 1981, when a nail punctured the heel of his right shoe.

Chittum tried to treat the wound himself, but it would not heal.  He then came under the care of Dr. Young S. Kang, a plastic and reconstructive surgeon.  In August 1981, Dr. Kang performed a split thickness skin graft on Chittum's right heel.

In January 1982, Dr. Kang released Chittum to return to work, and Chittum reported to N & W's terminal supervisor and advised him about the skin graft.  N & W then sent Chittum to a local hospital for a fitness-for-duty examination by a Dr. Watts, the physician regularly used by N & W for such examinations. Following the examination, Dr. Watts released Chittum to return to work without any restrictions, and Chittum returned to work the next day.[1]

In October 1989, Chittum was required to work on and around

_____
[1]The record also discloses that Dr. Watts examined Chittum's foot in August 1989.

piles of railroad spikes in N & W's roadway materials yard. His work involved opening kegs containing spikes and dumping the spikes from the kegs onto the ground so the spikes could be salvaged for further use. While working there, Chittum tore the skin graft when he twisted his right foot on some spikes.

Initially, Chittum treated himself as Dr. Kang had taught him to do. In April 1990, however, he returned to Dr. Kang. The doctor prescribed an arch support to take the weight off Chittum's heel, and Chittum obtained the support and returned to work. In April 1991, Chittum again tore the skin graft slightly while working on the spike pile.

Chittum told Gary Obenchain and L.P. Porter, two of his supervisors, that working on the spike job was hurting him. None of his supervisors, however, did anything about his complaint or told him to stop working.

Chittum's condition worsened, and, on June 4, 1991, he returned to Dr. Kang. The doctor noted that the original skin graft had deteriorated sufficiently to require a new surgical procedure.

The day after Chittum's June 4, 1991 visit with Dr. Kang, Chittum told Obenchain that he was going to have further surgery relating to the skin graft on his right heel. Chittum also told Linwood Crenshaw, another supervisor, of his impending surgery. No one, however, told Chittum to stop working, and Chittum continued to work until June 17, 1991, when he tore the skin

graft a third time.  Dr. Watts then ordered that Chittum be taken out of service.

Dr. Kang performed the second surgery in two stages in June and July 1991.  Chittum was never released to return to work, and N & W concedes that Chittum is not physically qualified to do so.

III

N & W contends that the trial court erred in permitting Chittum to prevail on his claim of initial injury and subsequent aggravations thereof "where there was no evidence that [N & W's] alleged negligence played any role in [Chittum's] October, 1989 injury."  N & W asserts that "[s]ince there was no evidence as to the real cause of [Chittum's] October, 1989 injury, the jury was left to speculate improperly and impermissibly as to what had caused the injury."

According to N & W, "[t]he evidence is uncontroverted that at the time of his injury in October, 1989, [Chittum] was working as a painter's helper with a Bridge and Building Gang [, and] [t]he duties of a painter's helper did not require him to open spike kegs or walk over spikes."  N & W bases this conclusion on certain answers Chittum gave during his cross-examination.

During the cross-examination, N & W's counsel confronted Chittum with certain N & W documents which indicated that Chittum was not working in the roadway materials yard during October 1989.  When confronted with these documents, Chittum agreed "as

- 4 -

far as [the documents] show."[2]  On redirect examination, however, Chittum testified that, despite what the documents indicated, he first tore the skin graft while working in "the railway material yard."

N & W, in asserting its contention, relies upon the doctrine, established in Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922), that a litigant is bound by his own factual statements.  The doctrine, however, does not apply "to an adverse statement standing in isolation from the litigant's testimony as a whole."  Baines v. Parker and Gladding, 217 Va. 100, 105, 225 S.E.2d 403, 407 (1976).  Consequently, "[a] damaging statement made in one part of [a litigant's] testimony must be considered in the light of an explanation of such statement made in a later part of his testimony. . . .  And it is generally for the jury to determine whether it will accept such explanation or clarification."  VEPCO v. Mabin, 203 Va. 490, 494,

_____

[2]Based on the documents and Chittum's answers during cross-examination, N & W also contends that there was a fatal variance between Chittum's allegations in his motion for judgment and his proof.  N & W advanced this contention in the trial court during its post-verdict argument.  The trial court rejected the contention, reasoning that it had not been made at trial "in such a manner as to call to the attention of the trial judge . . . and [Chittum's] lawyer . . . the fact that [the] argument was made."  We agree with the trial court.

N & W's counsel, at one time during the trial, did state that "the allegations . . . in the pleadings . . . are just simply wrong.  They have identified incidents that are not possible to have happened because of the time frame and where . . . Chittum was working."  We do not think, however, that this statement raised the issue of a fatal variance "with reasonable certainty."  Rule 5:25.

125 S.E.2d 145, 148 (1962).

In the present case, Chittum's damaging statement made in one part of his testimony cannot be viewed in isolation from his later testimony. The jury resolved this conflict in the evidence in Chittum's favor, and we conclude that the trial court properly rejected N & W's contention.

IV

N & W further contends that Chittum produced insufficient evidence of foreseeability to create a jury issue on the question of negligence. N & W asserts that "there is no evidence that [it] was on notice that allowing Chittum to do spike reclamation put his skin graft at risk."

An essential ingredient of negligence under the Act is reasonable foreseeability of harm to the employee. Norfolk and Western Railway Co. v. Johnson, 251 Va. 37, 43-44, 465 S.E.2d 800, 805 (1996). However, an employer need not foresee the particular consequences of its negligent acts; rather, it must compensate its employee "for even the improbable or unexpectedly severe consequences of [its] wrongful act." Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 120-21 (1963).

When the evidence in the present case is viewed in light of the foregoing principles of law, we conclude that the jury reasonably could have found that the injury Chittum sustained was reasonably foreseeable. Chittum testified that a N & W claim agent and a N & W supervisor came to his home and saw his right

- 6 -

heel while he was recuperating from the 1981 skin graft operation.  Chittum complained to his supervisors, Obenchain and Porter, about having to work on the spike pile.  N & W's own physician, Dr. Watts, examined Chittum's skin graft in 1982 and again in 1989 and never recommended any restrictions or limitations regarding the work Chittum could perform.  Thus, we reject N & W's contention that it did not have notice of any risk to Chittum.  Indeed, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."  Tennant v. Peoria & P. U. Ry., 321 U.S. 29, 35 (1944).

V

N & W also contends that Chittum failed to establish that N & W's alleged negligence was the cause of his injury.  N & W asserts that none of Chittum's experts related the breakdown of his skin graft to walking over spikes.  N & W further asserts that there is no evidence that its negligence caused the alleged aggravations of the primary injury.

Pursuant to the Act, an employer has a duty to provide its employees with a safe place to work.  Bailey v. Central Vermont Ry., 319 U.S. 350, 352-53 (1943).  The employer also has a nondelegable duty to inspect its premises and other areas where its employees are required to work and to take reasonable precautions to protect its employees from possible danger.  Cazad

- 7 -

v. Chesapeake & Ohio Ry., 622 F.2d 72, 75 (4th Cir. 1980).

Moreover, the employer has a duty "to assign its employees to

work for which they are reasonably suited . . . [, and it]

breaches that duty if it knew or should have known that its

assignment exposed the employee to an unreasonable risk of harm."

Sabb v. Norfolk & P. Ry. Co., 222 Va. 19, 23, 278 S.E.2d 795,

798 (1981).

The Supreme Court, in establishing the standard under the

Act by which a jury may properly determine a causal relationship

between an employer's negligence and an employee's injury, stated

the following:

> [T]he test of a jury case is simply whether the proofs
> justify with reason the conclusion that employer
> negligence played any part, even the slightest, in
> producing the injury . . . for which damages are
> sought.  It does not matter that, from the evidence,
> the jury may also with reason, on grounds of
> probability, attribute the result to other causes,
> including the employee's contributory negligence.

Rogers v. Missouri Pacific R.R., 352 U.S. 500, 506 (1957)

(footnotes omitted).

Applying the foregoing principles of law, we conclude that

the evidence in the present case, when viewed in the light most

favorable to Chittum, is sufficient to support the jury's finding

that N & W was negligent in failing to provide Chittum with a

safe place to work.  From the testimony of Chittum and several of

his co-workers, as well as various photographs depicting the area

where Chittum was required to work, the jury reasonably could

have found that N & W knew, or should have known, that Chittum's

work assignment exposed him to an unreasonable risk of harm.

We also conclude that the evidence supports the jury's finding that N & W's negligence played a part in producing the primary injury in October 1989 and the aggravations thereof in April and June 1991. Although much of the expert testimony reasonably could have produced a different result, Chittum's own testimony was sufficient to create a jury issue regarding causation. As we have said, "`even when medical testimony fails to establish causal connection expressly,'" a plaintiff's testimony alone is sufficient to create a jury issue regarding causation. Todt v. Shaw, 223 Va. 123, 126-27, 286 S.E.2d 211, 213 (1982) (quoting Peterson v. Neme, 222 Va. 477, 483, 281 S.E.2d 869, 872 (1981)).

VI

Finally, N & W contends that the trial court erred in ruling that, for purposes of calculating Chittum's net wages under the Act, Tier I and Tier II retirement payments made by Chittum should not be deducted from his gross wages. N & W relies in large part on Norfolk & W. Ry. v. Liepelt, 444 U.S. 490 (1980). In Liepelt, a wrongful death action brought under the Act, the Supreme Court held that, with respect to the measure of damages, a railway company is entitled to present evidence of the effect of income taxes on the decedent's estimated future earnings. 444 U.S. at 493-94.

The Supreme Court, however, has never held that Tier I and

Tier II payments toward retirement are to be treated the same as federal and state income taxes and, therefore, deducted to establish net income.  Nevertheless, building upon <u>Liepelt</u>, N & W asserts that the retirement payments are congressionally mandated federal taxes and, therefore, like income taxes, should be deducted from gross income in determining damages.  We do not agree.

Even though retirement payments are mandated by Congress, we do not equate them with income taxes.  Furthermore, N & W has not cited, and we have not found, a single FELA decision from either a federal or a state court holding that such retirement payments should be deducted from gross income in calculating net income.  We conclude, therefore, that the trial court did not err in rejecting N & W's contention.

VII

We find no error in the trial court's rulings.  Accordingly, we will affirm the judgment.

<u>Affirmed</u>.