IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 17, 2005 Session

## BILLY K. POMEROY v. ILLINOIS CENTRAL RAILROAD COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. 97329-2 T.D.     James F. Russell, Judge**

_____

**No. W2004-01238-COA-R3-CV - Filed May 19, 2005**

_____

Plaintiff, a switchman/brakeman for Illinois Central Railroad Company,  filed a claim for damages arising from injuries allegedly caused by the railroad's failure to maintain a track switch.  The jury allocated 100% fault to the railroad and awarded Plaintiff $500,000 in damages.  The trial court denied the railroad's motion for a directed verdict, remittitur, or new trial.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Harold W. McLeary, Jr., and W. Bradley Gilmer, Memphis, Tennessee, for the appellant, Illinois Central Railroad Company.

M. Dykes Barber, Jr., Birmingham, Alabama, and Stephen R. Leffler, Memphis, Tennessee, for the appellee, Billy K. Pomeroy.

**OPINION**

This appeal arises from a jury verdict in favor of Plaintiff Billy K. Pomeroy (Mr. Pomeroy), finding Defendant Illinois Central Railroad Company ("Illinois Central") negligent and 100 percent at fault for injuries sustained by Mr. Pomeroy, a switchman/brakeman employed by Illinois Central. Mr. Pomeroy was injured on January 7, 1997, while riding a railroad car during a switching maneuver at Johnston Yard in Memphis.  During the switching maneuver, a track switch (the A-15 switch) malfunctioned, resulting in the derailment of the car on which Mr. Pomeroy was riding and causing Mr. Pomeroy to fall.  Mr. Pomeroy suffered injuries to his back as a result of the fall, but was able to return to work six weeks after the accident.

In October 1998, Mr. Pomeroy filed a complaint for damages against Illinois Central pursuant to the Federal Employers' Liability Act ("FELA").  In his complaint, Mr. Pomeroy alleged that

Illinois Central negligently allowed the A-15 switch to become defective and negligently failed to provide a safe work environment. He averred that Illinois Central's negligence was the proximate cause of permanent injuries he suffered when the railroad car derailed and he was thrown from the car. He prayed for damages in the amount of $250,000 for lost wages and benefits, past and future medical expenses, past and future pain and mental anguish, and permanent physical disability. On October 9, 2003, Mr. Pomeroy moved to amend his complaint to increase damages to $500,000.

Illinois Central answered on November 23, denying negligence and notice of an unreasonable risk of harm within its control. It averred Mr. Pomeroy's injuries resulted from his own negligence, failure to follow safety procedures, and pre-existing ailments and infirmities.

The matter was tried by a jury October 6-10, 2003. Illinois Central moved for a directed verdict at the close of proof. The trial court denied the motion and the matter was submitted to the jury. On October 10, 2003, the jury returned its verdict assessing 100 percent fault to Illinois Central and awarding Mr. Pomeroy $500,000 in damages. The trial court entered an order on the verdict on November 6, 2003. Pursuant to Tennessee Rule of Civil Procedure 50.02, Illinois Central moved the court to set aside the verdict and direct a verdict for Illinois Central in accordance with Illinois Central's motion for directed verdict. Illinois Central moved, in the alternative, for a new trial or for remittitur pursuant to Tennessee Code Annotated § 20-10-102. The trial court denied the motions on April 8, 2004, and Illinois Central filed a timely notice of appeal to this Court. We affirm the judgment of the trial court.

### *Issues Presented*

Illinois Central raises the following issues, as we slightly re-state them, for our review:

(1)     Whether trial court erred in denying Illinois Central's motions for directed verdict.

(2)     Whether the trial court erred by failing to charge the jury with Illinois Central's requested instructions.

(3)     Whether trial court's jury verdict form failed to correctly state the law pertaining to negligence actions under FELA and failed to accurately reflect the court's instructions.

(4)     Whether the trial court erred in permitting Mr. Pomeroy's counsel to engage "in rhetoric regarding the calculation of damages during closing argument, which was inconsistent with the court's instructions to the jury."

(5)     Whether the trial court erred in permitting Mr. Pomeroy's co-worker to express expert opinions regarding the practice of railroad employees.

(6)     Whether the trial court erred in holding Illinois Central's employee was a managing agent and by permitting Mr. Pomeroy to examine him through leading questions.

(7)     Whether the trial court erred in refusing to exclude portions of Mr. Pomeroy's expert witness's testimony regarding the calculation of past and future lost wages.

(8)     Whether the trial court erred in denying Illinois Central's motion for a new trial or remittitur.

### *Directed Verdict*

Illinois Central asserts, "it is clear that the Plaintiff was the sole cause of his own injury" and that the trial court, therefore, erred in denying its motion for a directed verdict. Our review of a trial court's decision to grant a directed verdict is well-settled. A directed verdict is appropriate when the evidence is susceptible to only one conclusion. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002)(citing *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000)). This conclusion, however, cannot be based on speculation, conjecture, or guesswork. *Id.* If reasonable persons could draw conflicting conclusions on issues of fact, the matter should go to the jury. *Id.* When deciding whether a trial court should have granted a directed verdict, we must take the strongest legitimate view of the evidence in favor of the opponent of the motion. *Id.* Further, we must allow all reasonable inferences in favor of the opponent of the motion and disregard all evidence contrary to the opponent's position. *Id.* Once the court has determined that the defendant in a negligence action owes plaintiff a duty, the question of whether the defendant has breached his duty and thereby caused plaintiff's injury are matters to be determined by the finder of fact. *Patterson-Khoury v. Wilson World Hotel-Cherry Road*, 139 S.W.3d 281, 285 (Tenn. Ct. App 2003). Although negligence is not presumed from the mere fact that plaintiff has suffered an injury, when different conclusions may be reached regarding fault, the question is one to be submitted to the jury. *Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001). Likewise, in actions brought under FELA, a defendant's motion for a directed verdict must be denied where "the fruits justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957)(emphasis added).

Upon review of the record in this case, we agree with the trial court that the evidence is not susceptible to one conclusion. It is undisputed that the malfunction of the A-15 switch caused the car on which Mr. Pomeroy was riding to derail, that the derailment caused Mr. Pomeroy to fall from the car, and that the fall resulted in injuries. The matters of whether Illinois Central negligently failed to maintain the A-15 switch, whether Mr. Pomeroy's injuries resulted from negligence on the part of Illinois Central and, assuming negligence and causation, the allocation of fault between the parties are questions of fact properly submitted to the jury. Accordingly, the trial court correctly denied Illinois Central's motion for a directed verdict.

***Jury Instructions and Verdict Form***

Illinois Central moved the trial court to give thirty-two specific jury instructions. On appeal, it asserts the trial court erred by failing to correctly instruct the jury on the elements of damages permissible in a FELA case. Specifically, it asserts the trial court erred in denying Illinois Central's request for jury instruction numbers 22, 23, and 29. It further asserts the trial court erred by omitting the phrase "even if the Plaintiff proves each and all elements of his case" from the court's charge regarding Mr. Pomeroy's ability to recover if he was the sole cause of his injury. Illinois Central also submits the verdict form submitted to the jury in this case was inconsistent with the trial court's instructions because it failed to require the jury to find that Illinois Central's negligence, if any, was the proximate cause of Mr. Pomeroy's injury.

The trial court's instructions guide the jury in its deliberations. The instructions must be plain and understandable, and must inform the jury of each applicable legal principle. *Wielgus v. Dover Indus.*, 39 S.W.3d 124, 131 (Tenn. Ct. App. 2001). They must also reflect the theories that are supported by the parties' pleadings and proof, as well as the parties' claims and defenses. *Cole v. Woods*, 548 S.W.2d 640, 642 (Tenn. 1977). Jury instructions must be correct and fair as a whole, although they do not have to be perfect in every detail. *Wielgus*, 39 S.W.2d at 131.

Upon review, we read a trial court's instructions to the jury in their entirety and in context of the entire charge. *See id.* The trial court should give requested special jury instructions when they are a correct statement of the law, embody the party's legal theory, and are supported by the proof. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 445 (Tenn.1992). However, the trial court may decline to give a special instruction when the substance of the instruction is covered in the general charge. *Id.* Where the trial court has fully and fairly charged the jury on the applicable law, the denial of a special request for an additional jury instruction will not be reversed on appeal. *Id.* We will set aside a jury verdict because of the trial court's denial of a requested instruction only where the rights of the requesting party have been prejudiced. *Spellmeyer v. Tennessee Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn. Ct. App. 1993). Additionally, where the trial court's instructions clearly and definitely set forth the elements upon which liability must be based, the failure to recite each element in the verdict form will not render the verdict invalid. *State v. Faulkner*, 154 S.W.3d 48, 62 (Tenn. 2005).

Illinois Central's requested jury instruction number 22 read:

> The law does not make the Defendant railroad an insurer of the safety of its employees, nor of the safety of the places in which they work. Defendant is not bound to anticipate every possible accident because a railroad is necessarily attended by some danger and it is impossible to eliminate all danger. Defendant is bound only to exercise the care which the particular circumstances reasonably demand. This basis of Defendant's liability, if any, is negligence and not the mere fact that an injury occurs while Plaintiff is working. Moreover, that negligence must, in whole or in part, cause the injury, or Plaintiff may not recover.

Requested instruction number 23 read:

A railroad is not charged with those injuries to its employees which result from the usual risks incident to employment on railroads and which risks cannot be eliminated by the railroad through the exercise of reasonable care.

Requested instruction number 29 read:

If you find that there was both a safe way and a dangerous way by which plaintiff could have performed his work and knew, or in the exercise of ordinary care, should have known, of the safe way of doing said work, and voluntarily chose the dangerous way and was injured thereby, and if you find that such choice constituted negligence on plaintiff's part, and that such negligence was the sole cause of his injury, if any, then plaintiff cannot recover and it would be your duty to return a verdict for defendant.

The trial court instructions to the jury in this case were lengthy and detailed. The court's instructions stated, in pertinent part:

It is my duty to instruct you on the rules of law that you must follow and apply in arriving at your decision in this case, and you must follow the law as I instruct you, so bear with me and stick with me.

. . . . You must not be influenced by sympathy, prejudice or passion. You are to consider all of my instructions as a whole and are to regard each in the light of all the others.

If in these instructions any rule, direction or idea is repeated or stated in varying ways, no emphasis is intended by me and none must be inferred by you.

. . . .

Remember, that any questions, statements or arguments made by the lawyers during a trial are not evidence in the case; however, if the lawyers have stipulated or admitted any fact, you will regard the fact as being conclusively [sic] proof as to the party or parties making the stipulations or admissions.

. . . .

You must never speculate to be true any insinuation suggested by a question asked of a witness. . . .

. . . .

-5-

. . . . it is for you to decide how much weight to give to any evidence.

. . . .

The defendant, Illinois Central Railroad Company, categorically denies that it was negligent in any manner whatsoever, even the slightest. Rather, it is the theory and contention of the railroad that the plaintiff himself was guilty of negligence which was the sole, direct and proximate and legal cause of the accident, and that he is entitled to recover nothing.

It is the further theory and contention of the defendant that if it should be found to be at fault to any degree whatsoever, which is denied, then the contributory negligence of the plaintiff was also a legal cause of the accident and that the fault of the plaintiff must be compared to the fault, if any, of the defendant such that his recovery would be reduced by the percentage of fault contributed to him.

. . . .

. . . In this lawsuit the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: A, that the defendant was at fault; B, the nature and extent of the plaintiff's injuries and damages.

. . . .

The defendant as an affirmative defense claims that the plaintiff was at fault. The effect of this affirmative defense is that, if proved, it will either prevent the plaintiff from recovering a judgment in this case or will reduce the recovery of the plaintiff.

. . . in deciding this case you must determine the fault, if any, of each of the parties. If you find that more than one of the parties are at fault, you will then compare the fault of the parties. To do this, you will need to know the definition of fault.

A party is at fault if you find by a preponderance of the evidence that the party was negligent and that the negligence was a legal cause of the injury or damage for which claim is made. Fault as defined has two parts: Negligence and legal cause. Negligence is the failure to use ordinary or reasonable care. It is either doing something that a reasonably careful person would not do, or the failure to do something that a reasonably careful person would do under circumstances similar to those shown by the evidence.

-6-

The amount of caution required of a person in the exercise of ordinary care depends upon the conditions apparent to that person or that should be apparent to a reasonably prudent person under circumstances similar to those shown by the evidence.

Negligence will not be inferred from the mere happening of an accident or occurrence of injury. It must be proved by direct or circumstantial evidence. A person may assume that every other person will use reasonable care unless the circumstances indicate the contrary to a reasonably careful person.

The second part of fault is the legal cause. A legal cause of an injury is a cause which in natural and continuous sequence produces the injury, and without which the injury would not have occurred. An act or omission which fails to prevent injury is a legal cause of the injury. There may be more than one legal cause of an injury. To be a legal cause of an injury there is no requirement that it be the only cause, the last act, or the one nearest to the injury so long as it [is] a factor in producing the injury or damage.

. . . .

As I said before, the plaintiff has the burden to prove fault on behalf of the defendant. If the plaintiff fails to do so, you should find the defendant's fault to be zero.

Likewise, the defendant has the burden to prove fault on behalf of the plaintiff. If the defendant fails to do so, you should find the plaintiff's fault to be zero. If you find both the plaintiff and the defendant to be at fault, you must then determine the percentage of fault chargeable to each of them.

. . . .

. . . This percentage figure for each party may range from zero percent to 100 percent. . . .

. . . .

. . . you may also consider any . . . factors that you find to be important under the facts and circumstances of this case. One, whose conduct more directly caused the injury to the plaintiff? Two, how reasonable was the person's conduct in confronting a risk? For example, did the person know of the risk or should the person have known of it? Did the person fail to use, to reasonably use an existing opportunity to avoid an injury to another? Four, was there a sudden emergency

requiring a hasty decision?  Five, what was the significance of what the person was attempting to accomplish by the conduct?

. . . .

In this case the plaintiff seeks to recover damages under a law of the United States commonly called the Federal Employers Liability Act.  This type does not mean that every employer is liable for every injury. . . .

The plaintiff in this case claims damages for personal injuries alleged to have been suffered as a result of negligence on the part of the defendant, his employer. Section 1 of the Federal Employers Liability Act as set forth in 45 United Stated Code Annotated, Section 51, under which the plaintiff claims the right to recover damages in this case action provides in part as follows, and I quote: Every common carrier by railroad while engaging in commerce between any of the several states shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or such injury resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, end quote.

. . . .

This is a negligence action.  This means that before the plaintiff can recover he must prove that his injury resulted in whole or in part from the negligence or fault of the defendant, which is not to be confused with a workers' compensation case. Workers' compensation involves an insurance arrangement under which an employer pays for the injury or even death of an employee regardless of negligence or fault of the employer.

Therefore, you must disregard any personal views you may have respecting so-called on-the-job injuries, and you must apply the rule of law that the plaintiff may not collect any damages in this case unless it is first shown that his injury resulted in whole or in part from the defendant's negligence or fault.

The railroad is not an [insurer] of the safety of its employees, and negligence on the part of the railroad may not be presumed or inferred from mere proof of the happening of an accident. . . .

A word about unavoidable risks or dangers.  A railroad is not liable for those risks or dangers which it could not avoid in the observance of its duty of due care. . . . You must determine the extent to which, if any, the risks and dangers involved in this case were unavoidable, if at all.

A word about defects or insufficiency in equipment. The law under which the plaintiff brings this action provides that the defendant shall be liable for injury resulting, and I quote, by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, tracks, roadbeds, works, or other equipment, end quote.

This statutory provision does not mean that the railroad employer is responsible for injury of an employee merely because it was caused by some defect or insufficiency of one of the items referred to. To the contrary, the statute imposes liability upon the railroad employer only when the defect or insufficiency is due to negligence, even the slightest, on the part of the employer.

If there is an injury as a result of some defect or insufficiency, you must decide the extent to which defect or insufficiency was due to negligence, even the slightest, on the part of the railroad.

A word about the safe manner of doing work. It was the continuing duty of the defendant as an employer at the time and place in question to use ordinary care under the circumstances in furnishing the plaintiff with a reasonably safe place in which to work . . . This does not mean, of course, that the employer is a guarantor or [insurer] of the safety of the place [of] work. . . .

A word about the duty regarding tools, appliances and equipment and operations. The defendant has a duty to use ordinary care . . . the test is not whether the appliance to be used is absolutely safe, but whether or not the employer has exercised reasonable care and diligence commensurate with the practical application of the railroad to make them reasonably safe.

However, the employer is not required to furnish the latest, best and safest tools, machinery or appliance, or to discard standard tools, machinery or appliances upon the discovery of later developments or better equipment or appliances. Neither is there any duty on the employer to anticipate misuse of equipment, nor to guard against the consequences of misuse.

Ordinarily an employee is not required to make an inspection of the tools and equipment furnished him by his employer. . . . [H]owever, it is the duty of the employee to use ordinary care to discover open and obvious defects[.]

A word about actual constructive notice of defective conditions. Before you may find the railroad liable for the injury of an employee resulting from a defective condition in equipment or his place of work, you must be satisfied that the railroad had either actual or constructive notice of the defective conditions, and that it had a

reasonable opportunity to remove or repair the defect before the occurrence involved in this action.

. . . .

. . . you must be satisfied that such notice was received by an employee who was authorized to repair or remedy such condition or by an employee having a duty to report such condition to one in authority, or by a person who in a reasonable delegation of responsibility ought to have had such authority and duty.

A word about the duty of a plaintiff to exercise reasonable care. It was the continuing duty of the plaintiff to exercise reasonable and ordinary care for his own safety and protection. In your consideration of this issue, you may consider the plaintiff's action in the light of any conditions known to him. If you find that he did not exercise such care as a reasonably prudent person would under like circumstances and that such conduct contributed in whole or in part to the plaintiff's injury, then he is negligent. . . .

It was his duty to exercise reasonable care to inform himself of his surroundings . . . and of any condition which might create any danger or hazard for him, including the A15 switch, and to use such care as to avoid injury from it.

. . . .

. . . as the danger that should reasonably be foreseen increases, so the amount of care required by law will also increase.

. . . .

All work on a railroad involves some danger, but it has to be done, and the dangers involved do not involve liability provided the railroad takes reasonable precautions consistent with the conduct of the business. . . . In your consideration of this issue, you may consider the plaintiff's actions in the light of any condition known to him or conditions which should have been known to him in the exercise of ordinary care.

. . . .

. . . If you find from the evidence in this case that the condition of which the plaintiff complained was one which a person using ordinary and reasonable care could have discovered and avoided, then you may find that person to have been negligent.

. . . company rules and regulations . . . adopted by the railroad for the safety of its employees . . . [are] evidence of the degree of reasonable care to be exercised on the part of either the plaintiff or the defendant in situations to which the rules apply.

The verdict form in this case simply asked the jury to determine whether each party was negligent under the court's instructions, to assign percentages of fault, and to determine the amount, if any, of the damage award. It contained no other instructions.

Illinois Central's contention, as we perceive it, is that the trial court's instructions and the verdict form were inadequate for two reasons. First, they failed to convey to the jury that Mr. Pomeroy could not recover if he was the sole cause of his injury. Second, they failed to convey that Mr. Pomeroy could recover only if the jury found Illinois Central to be negligent and also found that such negligence proximately caused Mr. Pomeroy's injuries.

Reading the trial court's jury instructions as a whole, we find them to have been clear, detailed, and accurate regarding the applicable law and theories of the parties in this case. The instructions excerpted above demonstrate that the trial court made it clear that railroads are not insurers of their employees safety, that some element of danger is inherent in railroad work, and that railroads are expected to act only with reasonable care in light of the circumstances. The court also explained that, in order to recover, Mr. Pomeroy must prove that Illinois Central was negligent and that its negligence caused his injuries.

Further, the court instructed the jury that Mr. Pomeroy was under a commensurate duty to take reasonable care to avoid risks, that the amount of care increased with the known risks and dangers, and that the railroads rules and regulations were evidence of the degree of care to be expected of Mr. Pomeroy. The court explained that Mr. Pomeroy would have been negligent had he failed to exercise reasonable care to ensure his own safety. The court's instructions also emphasized that Mr. Pomeroy bore the burden of proving that Illinois Central was negligent and that such negligence was the proximate cause of his injury. They also made clear that in order to find Illinois Central to be at fault, the jury must first find both negligence and causation.

Further, we note that Illinois Central does not contend that the A-15 switch was not in disrepair or that its malfunction did not result in the derailment of the car on which Mr. Pomeroy was riding. There is no doubt in this case of the chain of events that led to Mr. Pomeroy's being thrown from the train car. Rather, Illinois Central asserts that it was not negligent in its maintenance of the switch and that, even assuming negligence, Mr. Pomeroy's own negligence was the sole cause of the injuries he sustained. Its argument, as we perceive it, is that the trial court failed to instruct the jury that even if Mr. Pomeroy proved each element of his case, i.e., negligence on the part of Illinois Central, he nevertheless could not recover because his own failure to take a safer course of action - walking along side the car rather than riding on it - was the proximate cause of his injuries. To a large extent, Illinois Central's argument centers not on causation but on the allocation of fault.

Under FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (quoting 45 U.S.C. § 51). In adopting FELA, Congress created a remedy that "shifted part of the 'human overhead' of doing business from employees to their employers." *Gottshall*, 512 U.S. at 542 (citations omitted).

The courts have construed FELA liberally in order to further its remedial goal. *Id.* at 543. Moreover, the United States Supreme Court has opined that

a relaxed standard of causation applies under FELA [and] that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that the employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

*Id.* at 543 (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957)).

This relaxed standard of causation does not, however, make a railroad an insurer of its employees' safety. *Id.* The railroad's liability is based on its negligence and not on the mere fact that an injury occurs. *Id.* (citing Ellis v. Union Pacific R. Co., 329 U.S. 649, 653 (1947)). Accordingly, in FELA, Congress rejected the contributory negligence doctrine and adopted a comparative fault scheme. *Id.* at 542; 45 U.S.C. §53.

As noted, in the case before this Court, Illinois Central does not contend that the A-15 switch was not in disrepair, but only that its failure to repair the switch sooner was not negligence on its part. The jury disagreed; it found Illinois Central to have been negligent. Illinois Central further contends that Mr. Pomeroy was negligent because he chose to ride the train car during the switching maneuver rather than walking beside it. The jury again disagreed; it found Mr. Pomeroy to not have been negligent.

Illinois Central further contends that, assuming negligence, its negligence was not the cause of Mr. Pomeroy's injuries and that the trial court erred by not specifically requiring the jury to find "proximate cause" on the verdict form. We disagree. The trial court's instructions made it clear that "fault" entails both negligence and causation. Further, there is no contention that an intervening act of a third party or some other cause, other than Mr. Pomeroy's own negligence, contributed to Mr. Pomeroy's injuries. The jury determined that Illinois Central was 100 percent at fault for Mr. Pomeroy's injuries. Under the facts of this case, even assuming any error on the part of the trial court in omitting a separate and distinct finding of proximate cause from the verdict form, such error was harmless.

Finally, Illinois Central asserts the trial court erred by instructing the jury that Mr. Pomeroy could recover loss of enjoyment as a separate, independent element of damages. We note that the instruction as reproduced in Illinois Central's brief lists the damages for which a plaintiff is entitled

to cover, including "future loss of capacity for the enjoyment of life." We disagree with Illinois Central, however, that "future loss of capacity for the enjoyment of life" was enumerated as "a separate, independent element of damages" rather than as an "included element of the measure of damages for physical injury," as Illinois Central contends. The trial court's instructions characterized damages as "economic" and "non-economic," and included future loss of capacity for the enjoyment of life as one of several non-economic damages. The court further instructed, "[y]ou are not permitted to award speculative damages, which means compensation for future loss or harm which, although possible, is conjectural or not reasonably certain; however, you should compensate a plaintiff for any loss or harm, which is reasonably certain to be suffered as a legal result of the injury in question." The trial court also instructed the jury that, if it determined Mr. Pomeroy's injuries were aggravation of a pre-existing condition, it "should determine . . . what portion of the plaintiff's condition resulted from the aggravation and . . . make allowance in [the] verdict only for the aggravation."

We find no error in the trial court's instructions regarding liability, causation, or damages under FELA. This issue is without merit.

### Plaintiff's Closing Argument

Illinois Central contends the trial court erred in permitting counsel for Mr. Pomeroy to go outside of the proof in presenting a mathematical formula to calculate damages to the jury during closing argument. Upon review of the closing arguments, we observe that the "formula" for future pain and suffering to which Illinois Central objects amounts to a "calculation" by counsel that Mr. Pomeroy will work ten hours per day for about 250 work days per year for ten years with permanent injuries that resulted from his fall, including a fractured vertebra in his spine.

Illinois Central submits that there was no proof presented as to any calculation that a jury could make to guess the value of Mr. Pomeroy's pain and suffering, and that no evidence or testimony was presented that could be used to determine damages for future pain and suffering. It further submits that allowing Mr. Pomeroy's counsel to present this formula in his closing argument was contrary to the court's own instructions to the jury. Illinois Central relies on this Court's opinion in *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171 (Tenn. Ct. App. 1991), for the proposition that this error results in a mistrial and that, accordingly, the trial court erred in denying its motion for a new trial.

We disagree with Illinois Central's application of *Underwood* to this case. The trial court must exercise sound discretion in controlling the arguments of counsel. *Underwood*, 823 S.W.2d at 184. In *Underwood*, we observed that this Court will not interfere with the trial court's determination in refusing a mistrial based on an unwarranted argument by counsel unless it resulted in prejudice to the opposing party that could not be removed by sustaining an objection made by opposing counsel. *Id.* Further, we noted that an adequate curative instruction to the jury could remove any prejudice to the objecting party. *Id.*

-13-

In *Underwood*, plaintiff's counsel was specifically directed by the court not to discuss future loss of wages in his argument. *Id.* Counsel, however, overstepped the court's direction and argued such losses to the jury. *Id.* Defendant in *Underwood* objected and sought a mistrial. *Id.* The trial court refused to grant a mistrial, but said it would give a curative jury charge. *Id.* On appeal, we determined the trial judge had failed to give the curative instruction and that a mistrial would have been appropriate. *Id.* However, although the trial court in *Underwood* had erred in its instructions to the jury, we determined that any prejudice resulting from counsel's inappropriate argument was corrected by the trial court's subsequent grant of a remittitur. *Id.*

We note that, despite Illinois Central's contention that the remarks of Mr. Pomeroy's counsel were outside the proof, there is evidence in the record that Mr. Pomeroy was 50.0 years of age, that he had a life expectancy of 27.5 years, and a work-life expectancy of 12.2 years. Further, even assuming, *arguendo*, that Mr. Pomeroy's counsel's "formula" was inappropriate, any prejudice which may have resulted to Illinois Central was cured by the trial court's instructions to the jury. The trial court instructed, "[n]o definite standard or method of calculation is prescribed by law by which to affix compensation for such injuries, nor is the opinion of any witness required as to the amount." After charging the jury with the various aspects of economic and non-economic damages, the trial court instructed the jury that is was "not permitted to award speculative damages" and that "[t]here is no mathematical formula by which factors of this kind can be fairly determined." As Illinois Central observes in its brief to this Court, these instructions clearly contradict the notion that damages, if any, should be calculated based on any formula. Thus, any error was cured.

### *Expert Evidence*

We next turn to Illinois Central's assertion that the trial court erred in permitting Mr. Pomeroy's co-worker, Richard Gross (Mr. Gross), to express expert opinions regarding the practice of railroad employees. Illinois Central asserts that Mr. Gross was not qualified to testify as an expert and that his testimony regarding "good railroad practice" is irrelevant to the determination of the standard of care in this case.

Federal law governs matters of substantive law in FELA actions brought in state courts. *Brown v. Western Ry. of Ala.*, 338 U.S. 294, 296 (1949). State procedural rules govern procedural matters, however, unless application of those rules would interfere with a party's substantive federal rights or defenses. *Id.* Generally, state rules of evidence govern the admissibility of expert evidence in a FELA action brought in state court. *See, e.g., Whaley v. CSX Transp., Inc.*, 609 S.E.2d 286, 300 (S.C. 2005).

Tennessee Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training or education may testify in the
form of an opinion or otherwise.

Thus, a witness must be particularly skilled, knowledgeable, or experienced to give expert testimony. He must possess knowledge about the area or subject about which he testifies that is not generally within the knowledge or experience of the average person. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 443 (Tenn. 1992). In order to give opinion testimony as an expert, the witness must "have some special as well as practical acquaintance with the immediate line of inquiry." *Id.* (quoting *Benson v. Fowler*, 306 S.W.2d 49, 63 (Tenn. Ct. App. 1957)).

As the *Otis* court observed, "[w]here that line between an expert and a non-expert should be drawn must, under the varying conditions of cases and their environments, necessarily be laid down by *judex feri*[.]" *Id.* Thus, the trial court is afforded wide discretion regarding the qualification of expert witnesses. *Id.* (holding trial court did not abuse discretion by allowing retired fire-fighter with 31 years experience to give opinion testimony regarding cause and origin of fire.).

At time of injury and at the time of trial, Mr. Gross was a conductor (aka foreman) for Illinois Central[1] with 30 years experience. As such, he was the head of the train crew. Mr. Gross also trained new hires to make switching maneuvers such as that made on the night Mr. Pomeroy was injured.

Upon direct examination, counsel for Mr. Pomeroy asked:

[I]s it proper, under the rules, in your opinion and based upon your experience and
training and teaching these sessions, to ride a railroad car down into the track?

In his brief to this Court, Mr. Pomeroy assert's Mr. Gross's testimony "was a far cry from that which is characterized as expert testimony." The trial court, moreover, upon objection by Illinois Central to the above question, stated that Mr. Pomeroy's line of questioning did not elicit opinion, but fact. The trial court noted that Mr. Gross's testimony provided the fact that "[i]t's a custom and practice to have someone ride on the lead end of a shoving movement."

Having reviewed Mr. Gross's testimony in its entirety, we observe that Mr. Gross indicated that riding the railroad car rather than walking beside it during a switching maneuver was the normal procedure and the procedure which was encouraged. Mr. Gross testified:

The purpose of riding on that car i[s] to make sure the bars are all lined up so when
the coupling is made that they meet correctly. If not, they can run by them and
actually cause damage to the cars.

. . . .

---

[1] At the time of trial, Illinois Central had become Canadian National Railroad.

-15-

Anytime that you're going to ride a cut of cars to a coupling to other cars in the track, you're required to ride that car into the coupling to observe the coupling.

. . . .

. . . We're taught to cut down as many steps as you possibly can to speed up and get your work done as efficiently and safely as possible. So, anytime you have the opportunity to ride a car, that's what you want to do.

Q: That's what you were taught?

A: Yes.

Q: That's what you were trained?

A: Yes.

Accordingly, without determining whether Mr. Gross properly would have qualified as an expert, we agree with the trial court that this line of questioning elicited not opinion, but factual evidence of custom, practice, and training. Additionally, we disagree with Illinois Central that Mr. Gross's testimony was irrelevant regarding the standard of care. First, we note that Mr. Gross did not opine on whether Illinois Central was negligent in failing to repair the A-15 switch. Second, we observe that Mr. Gross's factual testimony concerning the normal practice during a switching maneuver, his first-hand knowledge of the condition of the switch, and the condition of the railroad yard were relevant to the jury's determination of whether Mr. Pomeroy failed to follow safety procedures or failed to take the safest course of action.

### *Leading Questions*

Illinois Central also asserts the trial court erred by determining that its employee, Tom Caldwell (Mr. Caldwell), was a managing agent and in accordingly permitting counsel for Mr. Pomeroy to examine him through leading questions. Rule 611(d) of the Tennessee Rules of Evidence provides, in pertinent part:

When a party in a civil action calls an adverse party (or an officer, director, or managing agent of a public or private corporation or of a partnership, association, or individual proprietorship which is an adverse party), interrogation on direct examination may be by leading questions.

The Tennessee Supreme Court has noted that

-16-

[t]hough the question of whether a particular person is a "managing agent" is to be answered pragmatically on an ad hoc basis, the courts look to see if the individual involved is invested by the corporation with general powers to exercise his discretion and judgment in dealing with corporate matters, whether he can be depended upon to carry out his employer's direction to give testimony at the demand of a party engaged in litigation with the employer, and whether he can be expected to identify himself with the interests of the corporation rather than with those of the other parties. Typically a court will look to all three of these factors, although it has been said that the third factor, identification with the interest of the employer, is the "paramount test."

*Seaboard Coastline R. Co. v. Hughes*, 521 S.W.2d 558, 561 (Tenn. 1975)(quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2103).

The *Seaboard* court adopted the federal rule developed in *Newark Insurance Company v. Sartain*, 20 F.R.D. 583 (N.D.Cal.1957), and held:

[A] managing agent is any person who:

1. Acts with superior authority and is invested with general powers to exercise his judgment and discretion in dealing with his principal's affairs (as distinguished from a common employee, who does only what he is told to do; has no discretion about what he can or cannot do; and is responsible to an immediate superior who has control over his acts);

2. Can be depended upon to carry out his principal's directions to give testimony at the demand of a party engaged in litigation with his principal; and

3. Can be expected to identify himself with the interests of his principal rather than those of the other party.

*Id.* at 562. None of these factors is controlling, and each should be considered. *Id.*

Whether to allow examination of a witness by leading questions is within the sound discretion of the trial court. *Wilkerson v. Altizer*, 845 S.W.2d 744, 747 (Tenn. Ct. App. 1992). Additionally, where testimony which is cumulative or established by other evidence in the record, the improper introduction of that testimony is harmless error. *Id.* This is consistent with Tennessee Rule of Appellate Procedure 36(b) which states:

A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

*Id.*

At the time of trial, Mr. Caldwell had been employed by Illinois Central (and its successor Canadian National Railroad) for 31 years. At the time of trial and at the time Mr. Pomeroy was injured, Mr. Caldwell was a track supervisor at Johnston Yard in Memphis. Mr. Caldwell testified that his duties were to "prepare a budget each year and to maintain and facilitate repairs, maintenance to the - - to the rail in Johnston Yards or actually Memphis terminal." He testified that he was responsible for the condition of those tracks and that it was his duty to make sure the switches were in good working order. He further testified that had inspected the A-15 switch, realized that it was worn out, and had ordered a replacement switch along with 11 other switches.

The record establishes that the trial court utilized the guidelines established in *Seaboard* when determining whether Mr. Caldwell was a managing agent. The record further establishes the trial court thoroughly examined this question in light of the *Seaboard* factors and determined that Mr. Caldwell was a managing agent within the purview of those factors. We find no abuse of discretion in the trial court's decision to allow examination of Mr. Caldwell by leading questions.

### *Expert Testimony Regarding the Calculation of Lost Wages*

Illinois Central submits the trial court erred by refusing to exclude portions of the testimony of Mr. Pomeroy's expert witness, economist Dr. Fred Johnson (Dr. Johnson), regarding the calculation of past and future lost wages. Illinois Central asserts Dr. Johnson's testimony was based on "time books" which should have been provided to Illinois Central in response to its request for documents but which were not produced until trial began. It submits it made a motion in limine to exclude the time books and the portions of Dr. Johnson's testimony based on the time books, which the trial court refused. Mr. Pomeroy, on the other hand, asserts Dr. Johnson testified that he did not review or rely upon the time books, but based his calculations on information provided to him by Mr. Pomeroy's counsel regarding work days missed by Mr. Pomeroy due to his injuries.

Illinois Central does not contend the testimony allegedly based on the time books was incorrect. Rather, Illinois Central's argument, as we perceive it, is whether the trial court erred by denying its motion in limine to exclude evidence based on the time books. We afford the trial court wide discretion regarding the admissibility of evidence and will not overturn the trial court's determination absent a clear abuse of that discretion. *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849, 857 (Tenn. Ct. App.1999). Even assuming, *arguendo*, Dr. Johnson's testimony was based on information gleaned from the time books and not, as he testified, on information received from Mr. Pomeroy's counsel, we find no abuse in discretion in the trial court's refusal to exclude this portion of Dr. Johnson's testimony.

Illinois Central also submits the trial court erred in refusing to exclude Dr. Johnson's testimony regarding lost future earnings because Dr. Johnson's calculations were incorrect under FELA. Illinois Central asserts that, under *Norfolk and Western Railway Company v. Liepelt*, 444 U.S. 490 (1980), Dr. Johnson's estimate of Mr. Pomeroy's future earnings was unsound because it

failed to take into account the "social security payroll taxes" Mr. Pomeroy would be required to pay under the Railroad Retirement Act.

Mr. Pomeroy, however, asserts *Liepelt* has been rejected as applicable to cases brought under FELA with respect to benefits under the Railroad Retirement Act. Mr. Pomeroy cites *Norfolk Southern Railway Company. v. Perkins*, 481 S.E.2d 545 (Ga. 1997), for the proposition that the calculation of Mr. Pomeroy's future wages should not be reduced by the amount of railroad retirement taxes that he would have been required to pay had he not been injured. Mr. Pomeroy further asserts that Dr. Johnson correctly deducted appropriate percentages for employee related expenses and taxes, and that he utilized a real wage and tax adjusted real discount rate when making his wage loss calculation.

In *Liepelt*, the administrator of the estate of a train fireman brought an action under FELA against the Norfolk and Western Railway Company ("the railroad") to recover damages suffered by the fireman's survivors as a result of his death. *Liepelt*, 444 U.S. 490 (1980). The jury awarded damages in the amount of $775,000. *Id.* at 491. On appeal, the Illinois Court of Appeals held that the trial court did not err when it "exclude[d] evidence of the effect of income taxes on future earnings of the decedent" and the Illinois Supreme Court denied leave to appeal. *Id.* (quoting *Liepelt v. Norfolk and W. Ry. Co*, 378 N.E.2d 1232, 1245 (Ill. App. Ct. 1978)). The United States Supreme Court reversed, holding, that "income tax is a relevant factor in calculating the monetary loss suffered by . . . dependants[.]" *Id.* at 494. The court reasoned that, because the measure of recovery in a wrongful death action under FELA is "'the damages . . . [that] flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received,'" it is after-tax income that provides the realistic measure of pecuniary loss. *Id.* at 493 (quoting *Michigan Cent. R. Co. v. Vreeland*, 227 U.S. 59, 70 (1913).

Courts subsequent to *Liepelt*, however, have noted that the Supreme Court has never held that federally mandated retirement payments should be treated as income taxes. *See, e.g., Norfolk and W. Ry. Co. v. Chittum*, 468 S.E.2d 877, 882 (Va. 1996). The Supreme Court of Georgia, moreover, observed that payments made under the Railroad Retirement Act, although congressionally mandated, are unlike FICA taxes because they are ultimately payable as retirement benefits to the employee. *Norfolk S. Ry. Co. v. Perkins*, 481 S.E.2d 545, 555 (Ga. 1997). Additionally, benefits received under the Railroad Retirement Act are not considered in mitigation of damages because they are not attributable to the employer's contributions. *Id.*

We agree with the Supreme Courts of Virginia and Georgia that the United States Supreme Court's reasoning in *Liepelt* is not applicable to railroad retirement taxes, which ultimately are payable to the railroad employee upon retirement. Accordingly, the trial court did not err by denying Illinois Central's motion in limine to rule the testimony of Dr. Johnson inadmissable based on Dr. Johnson's failure to deduct amounts payable under the Railroad Retirement Act in his calculations of Mr. Pomeroy's future earnings.

## *New Trial*

Illinois Central submits the trial court erred in denying its motion for a new trial because the jury verdict was clearly against the weight of the evidence. Illinois Central asserts, first, that the weight of the evidence does not support a finding that it was negligent. Second, it contends that the cause of Mr. Pomeroy's injuries was his own failure to take the safest course of action (walking alongside the train car rather than riding it during the switching maneuver). Third, Illinois Central 4quotes *Tennessee Trailways v. Ervin*, 438 S.W.2d 733, 735 (Tenn. 1969), for the proposition that its negligence, if any, was not the proximate cause of Mr. Pomeroy's injuries and that "[i]n Tennessee, proximate cause has been described as that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring with another which, if it had not happened, the injury would not have been inflicted." Illinois Central's argument, as we perceive it, is that it was not negligent and, even if it was negligent, the direct cause of Mr. Pomeroy's injuries was not Illinois Central's negligence in failing to maintain the A-15 switch, but his own choice to follow a course of action that was not the safest course of action possible. Illinois Central's argument must fail for three reasons.

First, federal substantive law governs an action brought under FELA. *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296 (1949); *Jennings v. Ill. Cent. R.R.*, 993 S.W.2d 66, 70 (Tenn. Ct. App. 1999). The question of what constitutes negligence in actions brought under FELA, therefore, is governed by federal law. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). Additionally, as noted above, under FELA an employer is liable for injuries or death "resulting in whole or in part" from the employers negligence. *Id.* at 542; 45 U.S.C. § 51. In light of the statute's remedial purposes, the courts have construed it liberally and have held that a "relaxed standard of causation applies under FELA." *Gottshall*, 512 U.S. at 543. Thus, "'[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" *Id.* (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957)).

In the case now before this Court, the uncontradicted testimony of Tom Caldwell, the track supervisor of Johnston Yard at the time of the injury in January 1997, was that the A-15 switch was worn out at the time Mr. Pomeroy was injured; that a replacement switch had been received in November 1996; and that, given the nine months "lead time" between when the replacement switch was ordered and when it was received, Illinois Central was on notice that the switch needed to be replaced for at least nine months prior to November 1996. As of January 7, 1997, however, the switch had not been replaced.

Illinois Central asserts that failure to replace the switch sooner was not negligent, but was in keeping with its standard maintenance schedule. It submits that it followed a highly complex maintenance schedule, and that repairs to the A-15 switch were scheduled in conformity with the overall maintenance plan. In essence, Illinois Central submits that because it followed standard procedure, it was not negligent.

-20-

Standard and customary conduct may be offered as evidence of whether a defendant exercised ordinary care, but it is not controlling. *Nashville, C. & St. L. Ry. v. Wade*, 153 S.W. 1120, 1121 (Tenn. 1913). "A customary way may be a negligent way." *Id.* A reasonably prudent person "governs his conduct according to the nature, character, and gravity of the circumstances, or state of facts, or business, or part of department of business with which he has no deal." The jury must determine, in light of all the facts and circumstances, whether the defendant acted in a reasonable and prudent way. *Id.*

In the present case, the uncontroverted testimony of the track supervisor was that Illinois Central had notice that the A-15 switch was worn out nearly a year prior to the injury to Mr. Pomeroy. The jury determined that, in light of all the circumstances and facts, Illinois Central was negligent despite its customary ways of doing things. There is material evidence to support this finding.

Second, Illinois Central asserts that, even assuming, *arguendo*, it was negligent, Mr. Pomeroy was the *sole* cause of his injury because he chose to ride the railroad car rather than walking beside it. In essence, Illinois Central's argument is one of contributory negligence and assumption of the risk. Congress removed these defenses from actions brought under FELA, however, well-before they were abrogated by the doctrine of contributory negligence. *Gottshall*, 512 U.S. at 544. Thus, this argument must also fail.

Finally, Illinois Central argues, as we understand its argument, that even if its negligence was *a* cause of injury to Mr. Pomeroy, it was not *the* proximate cause. In essence, it asserts that had Mr. Pomeroy not depended upon the equipment which the railroad provided, he would not have been injured.

> The Federal Employers' Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations. Not all these costs were imposed, for the Act did not make the employer an insurer. The liability which it imposed was the liability for negligence. . . . The purpose of the Act was to change that strict rule of liability, to lift from employees the "prodigious burden" of personal injuries which that system had placed upon them, and to relieve men "who by the exigencies and necessities of life are bound to labor" from the risks and hazards that could be avoided or lessened "by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employee does his work."

*Wilkerson v. McCarthey*, 336 U.S. 53, 68 (1949)(Douglas, J., concurring)(citing H.R. Rep. No.1386, 60th Cong., 1st Sess. 2 (1908)).

The question of whether Mr. Pomeroy was negligent, and of whether his negligence was the cause of his injuries, were properly submitted to the jury in this case. The jury determined Mr.

Pomeroy was not negligent, and the testimony of Mr. Gross provides material evidence to support the jury's determination. Accordingly, this argument also must fail.

### *Remittitur*

Finally, Illinois Central asserts, in the alternative, that the trial court erred in not ordering a remittitur pursuant to Tennessee Code Annotated § 20-10-102. The Tennessee Code Provides:

> (a) In all jury trials had in civil actions, after the verdict has been rendered, and on motion for a new trial, when the trial judge is of the opinion that the verdict in favor of a party should be reduced, and a remittitur is suggested by the trial judge on that account, with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the remittitur a new trial will be awarded, the party in whose favor such verdict has been rendered may make such remittitur under protest, and appeal from the action of the trial judge to the court of appeals.

> (b) The court of appeals shall review the action of the trial court suggesting a remittitur using the standard of review provided for in Rule 13(d) of the Tennessee Rules of Appellate Procedure applicable to decisions of the trial court sitting without a jury. If, in the opinion of the court of appeals, the verdict of the jury should not have been reduced, but the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount originally awarded by the jury in the trial court.

Tenn. Code Ann. § 20-10-102 (1994).

> The Code further provides, in pertinent part,

> (a) If the judgment of the trial court, with regard to a remittitur, is affirmed in the court of appeals, so that a party is required to make a remittitur or suffer a new trial, as in the judgment of the trial court, or if, by the opinion of the court of appeals, a further or a larger remittitur is required of the party in whose favor the verdict was rendered, or if after the case was tried in the lower court by the trial judge without a jury, or if after the case was tried in the lower court with a jury and no remittitur was suggested by the trial judge, a remittitur is first suggested or required in the court of appeals, on penalty of granting a new trial; then in each and all of these events the party in whose favor the verdict or judgment has been rendered may make the remittitur under protest in the court of appeals, and take the case, by application for permission to appeal, for review upon the point, to the supreme court.

Tenn. Code Ann. § 20-10-103 (1994).

The determination of damages in a personal injury case is within the province of the jury. *Grandstaff v. Hawks*, 36 S.W.3d 482, 499 (Tenn. Ct. App. 2000). Trial courts may suggest adjustments to the jury's award of damages when they believe them to be inadequate (suggesting additur) or excessive (suggesting remittitur). *Coffey v. Fayette Tabular Prods.*, 929 S.W.2d 326, 331 (Tenn. 1996). Where the trial court has granted a motion for remittitur, appellate courts review the court's decision under the standard of review set forth in Tennessee Rule of Procedure 13(d), presuming the court's finding to be correct unless the evidence preponderates otherwise. *Id.*

Appellate courts may suggest a remittitur where the trial court has not. *Id.* However, our authority is "more circumscribed" than that of the trial court. *Id.* Where the trial court, in its role as thirteenth juror, has approved a jury verdict, that verdict will not be disturbed where there is any material evidence to support it. *Id.* n.2. We must, therefore, review the evidence to determine whether material evidence supports a finding that the jury award is within the range of reasonableness and not excessive. *See Hand v. Norfolk So. Ry. Co.*, No. 03A01-9704-CV-00123, 1998 WL 281946, at *11 (Tenn. Ct. App. June 2, 1998), *perm. app. denied* (Tenn. Nov. 2 1988).

In *Hand*, this Court discussed the difficulty inherent in determining whether damages awarded largely in compensation for pain and suffering in an action brought under FELA are supported by material evidence. Because pain and suffering are not easily quantified and do not lend themselves to easy valuations, this Court agrees with the writer of *Hand* that the determination of whether such an award is excessive is somewhat subjective. *See id.* Conscious of our standard of review, however, we must objectively review the evidence and uphold the jury's determination where it is reasonably supported by any material evidence.

In this case, the jury awarded Mr. Pomeroy damages of $500,000. Illinois Central asserts this is excessive in light of the fact that Mr. Pomeroy put on evidence of $41,527 in special damages, including past and future lost wages and medical bills. It further submits such damages are excessive where Mr. Pomeroy underwent no surgery and there was no medical testimony that surgery would be required, where Mr. Pomeroy was released by his physician to return to work six weeks after the accident, and where he was able to perform all the activities of daily life. Mr. Pomeroy, on the other hand, asserts that although he returned to work six weeks after the accident, he has suffered permanent injuries to his spine and supporting muscles and ligaments. He submits he experiences unrelenting pain on a daily basis and is unsure of whether he will be able to continue working until reaching age 65.

Our review of the broad range of actions for damages brought under FELA reveal that there is no objective standard for the award of damages for pain and suffering. They are, to use the vernacular, "all over the place." Although we find the jury's award of $500,000 to be high, we cannot say that there is no material evidence to support the jury's verdict. Moreover, we cannot say that the jury's award, which was reviewed by the trial court in its role as thirteenth jury, is excessive or unreasonable.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed to the Appellant, Illinois Central Railroad Company, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE